DECISION AND JUDGMENT ENTRY
{¶ 1} Dennis Shahan appeals his conviction for gross sexual imposition and his classification as a sexual predator. He contends the court erred in admitting hearsay evidence concerning additional allegations of sexual abuse at his sexual predator determination hearing. He claims that admission of the evidence violated his constitutional rights to confrontation of witnesses and due process of law. Because the confrontation clause does not apply to sexual predator determination hearings, admission of the evidence did not violate Shahan's constitutional right to confrontation of witnesses. Moreover, admission of the hearsay evidence did not violate Shahan's due process rights because he had an opportunity to challenge the evidence by presenting evidence of his own. Shahan also contends the court's sexual predator determination is against the manifest weight of the evidence. We conclude there is competent, credible evidence to support the trial court's sexual predator determination. Finally, Shahan contends he received ineffective assistance of counsel during both his trial and his sexual predator determination hearing. He points to four instances of deficient conduct on the part of his defense counsel. Having reviewed the record, we conclude Shahan has not established that he received ineffective assistance of counsel. Thus, we affirm the judgment of the trial court.
 {¶ 2} Shahan met Etta Johnston in 1994. At the time, Mrs. Johnston had two daughters, Lori B. (DOB 4/25/92) and Claudia B. (DOB 1/17/94). Although Shahan and Mrs. Johnston only dated for a year, they remained close friends after their romantic relationship ended. Often, Shahan would care for Lori and Claudia while Mrs. Johnston was at work. According to Shahan, he helped raise Mrs. Johnston's daughters.
 {¶ 3} Eventually, Mrs. Johnston married and had another daughter. Even after Mrs. Johnston's marriage, Shahan remained good friends with her and her family. Once every month or two, Shahan would watch Mrs. Johnston's three daughters overnight so she could spend time alone with her husband
 {¶ 4} During the summer of 2001, Mrs. Johnston noticed that Lori no longer wanted to go to Shahan's house. When Mrs. Johnston questioned her about it, Lori told her mother that on a previous overnight visit to Shahan's house, he had touched her vaginal area.[1] According to Lori, she and her sisters had been sitting on a mattress watching Tarzan when Shahan picked her up and placed her on the couch. He proceeded to place his hand inside her underwear and touch her vagina, stopping only when she moved to the other side of the couch. Lori indicated that her two sisters, Shahan's girlfriend, and the girlfriend's granddaughter were in the room when this occurred. She also indicated that Shahan made her sleep in his bed between him and his girlfriend that night, although he did not attempt to touch her.
 {¶ 5} After learning of the incident, Mrs. Johnston contacted Washington County Children's Services, who interviewed Lori and notified the Washington County Sheriff's Department. Detective Warden of the Sheriff's Department then spoke with Lori and her mother. Based on that conversation, Detective Warden questioned Shahan. Initially, Shahan denied the allegation. Eventually, however, he admitted that he might have touched Lori's bare vagina. He also admitted that touching Lori "was probably doing something" for him. He then clarified that statement by indicating that he "was enjoying it".
 {¶ 6} In March 2002, the grand jury indicted Shahan on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4). At trial, the state presented testimony from Mrs. Johnston, Lori, and Detective Warden. The state also played the tape of Detective Warden's interview with Shahan. In his defense, Shahan offered the testimony of his former girlfriend and his son. Both witnesses testified that they were present on the night in question and that they did not see any improper conduct on Shahan's part. Shahan also testified in his own defense, claiming that he had never touched Lori. He claimed that Detective Warden had tricked him into admitting he had touched Lori even though it was not true.
 {¶ 7} After a one-day trial, the jury found Shahan guilty of gross sexual imposition. The court then held a combined sentencing and sexual predator determination hearing. Ultimately, the court sentenced Shahan to three years in prison and designated him a sexual predator. Shahan now appeals, raising the following assignments of error: "Assignment of ErrorNo. 1: Dennis Shahan was denied due process of law and his confrontational rights at the sexual predator hearing due to the trial court's reliance upon police detective testimony regarding written statements by alleged victims of Mr. Shahan's abuse, and the admittance of those statements into evidence, without requiring the alleged victims to testify. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.Assignment of Error No. 2: Mr. Shahan's right to due process was denied when the trial court adjudicated him as a sexual predator, when that finding was against the manifest weight of the evidence. Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. Assignment of Error No. 3: Dennis Shahan's right to the effective assistance of counsel was violated.Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 8} In his first assignment of error, Shahan contends the court erred in admitting hearsay evidence concerning additional allegations of sexual abuse at his sexual predator determination hearing. He contends admission of the evidence violated his constitutional rights to confrontation of witnesses and due process of law.
 {¶ 9} Because Shahan's counsel did not object to admission of the hearsay statements at the sexual predator hearing, we review this assignment of error under a plain error analysis. See Crim.R. 52(B). An appellate court will take notice of plain error with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Biros, 78 Ohio St.3d 426, 1997-Ohio-204,678 N.E.2d 891.
 {¶ 10} During the sexual predator determination hearing, the state presented the testimony of Detective Warden. Detective Warden testified that while investigating the present case, he learned of two other victims of sexual abuse — Shahan's daughter and niece. He testified that he spoke with both women and obtained written statements detailing the sexual abuse they experienced. He also testified about what the women had told him regarding the sexual abuse. During Detective Warden's testimony, the state offered the women's written statements into evidence. Shahan contends admitting the written statements into evidence and allowing Detective Warden to testify about the additional allegations violated his constitutional rights to confrontation of witnesses and due process of law.[2] He argues the court should have required his daughter and niece to testify in person so that he could cross-examine them.
 {¶ 11} Sexual predator determination hearings are civil in nature.State v. Cook, 83 Ohio St.3d 404, 422, 1998-Ohio-291, 700 N.E.2d 570. Because the Confrontation Clauses of the U.S. and Ohio Constitutions apply only to criminal matters, they do not apply to sexual predator determination hearings. State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169, 773 N.E.2d 502, at ¶ 4. Thus, admission of the hearsay evidence did not violate Shahan's constitutional right to confrontation of witnesses.
 {¶ 12} The basic tenets of procedural due process are notice and an opportunity to be heard. Hayden, 96 Ohio St.3d at 212, ¶ 6. R.C.2950.09(B)(1) sets forth the procedural requirements for a sexual predator determination hearing. According to R.C. 2950.09(B)(1), "* * * the offender * * * and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witness, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender * * * is a sexual predator."
 {¶ 13} Moreover, the Rules of Evidence do not strictly apply to sexual predator determination hearings. State v. Cook, 83 Ohio St.3d 404,425, 1998-Ohio-291, 700 N.E.2d 570. In Cook, the Supreme Court of Ohio held that a court may rely on reliable hearsay, such as a presentence investigation report, when making its sexual predator determination. Id.
Shahan acknowledges Cook's holding that a court may rely on reliable hearsay when making its sexual predator determination. He also acknowledges that evidence of uncharged sexual assaults is admissible at a sexual predator hearing. See State v. McElfresh (July 14, 2000), Washington App. No. 99CA36 (recognizing that the existence of other victims of sexual abuse is relevant when determining whether an offender should be classified as a sexual predator). See, also, State v. Jones,
Belmont App. No. 02 BE 36, 2003-Ohio-1219, at ¶ 24; State v. Burgess
(July 10, 2000), Fayette App. No. CA99-08-021. However, he contends the court should have required his daughter and niece to testify at the hearing so that he could cross-examine them. He contends their presence at the hearing was necessary to aid the court in testing the veracity of their allegations.
 {¶ 14} Because the Confrontation Clause is inapplicable to sexual predator determination hearings, the state was not required to call Shahan's daughter and niece as witnesses. Moreover, because the court may rely on reliable hearsay, "it is not per se prejudicial error for a trial court to base its determination upon evidence which could not be cross-examined". State v. Bailey (July 15, 1999), Franklin App. No. 98AP-1132. Shahan had the opportunity to challenge the accuracy and reliability of the hearsay evidence by presenting his own evidence and witnesses. See Cook, 83 Ohio St.3d at 426. See, also, State v. Brown,151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 5391, at ¶ 30, quotingBailey, supra. However, Shahan did not take advantage of that opportunity. In addition, Shahan could have subpoenaed his daughter and niece to testify for purposes of cross-examination. We find it quite significant that Shahan was aware at trial, far before the sexual predator determination hearing, that the state knew of the other allegations. Thus, he could have foreseen that the state would present evidence of the other allegations. Also important to our decision is the fact that the court continued the sexual predator hearing after the state presented its evidence. Thus, even if Shahan could not have foreseen that the state would present evidence of the other allegations, he had ample time after the evidence was presented to subpoena his daughter and niece and/or prepare a response to the state's evidence. Clearly, we are not dealing with a situation where the defendant is left with little or no means to address a "bolt from the blue."
 {¶ 15} In Williams v. New York (1949), 337 U.S. 241,69 S.Ct. 1079, 93 L.Ed. 1337, the United States Supreme Court addressed a similar argument in the context of sentencing. In Williams, the trial court chose to impose a death sentence despite the jury's recommendation of life imprisonment. In giving the reasons behind its sentence, the court relied, in part, on the pre-sentence investigation report. The court noted that Williams had been involved in thirty other burglaries near the area of the murder. Although he had not been convicted of these burglaries, Williams had confessed to some and been identified as the perpetrator of others. The court noted that the pre-sentence investigation report revealed Williams had been involved in certain activities that indicated he possessed "a morbid sexuality".
 {¶ 16} At the time the court sentenced Williams, a New York statute required sentencing courts to consider the defendant's previous criminal record along with reports of any mental, psychiatric, or mental examinations before imposing sentence. See Williams, 337 U.S. 243. It also permitted the court to "seek any information that will aid the court in determining the proper treatment of such defendant." Id. On appeal, Williams challenged the constitutionality of the statute. He argued that the statute violated his due process rights because it allowed the court to consider information from witnesses whom he had not had an opportunity to confront or cross-examine. Id. The United States Supreme Court rejected this argument, concluding that the due process clause does not prohibit a judge from relying on additional out-of-court information to assist him in imposing sentence. Id. at 252. The Court noted the difference between a trial, which is confined to the narrow issue of guilt, and sentencing, which attempts to determine an appropriate sentence after the issue of guilt has been determined. Id. at 247. The Court recognized that "* * * possession of the fullest information possible concerning the defendant's life and characteristics" is essential to selection of an appropriate sentence. Id. The Court also recognized that if a judge could only consider information presented in open court by witnesses subject to cross-examination, then most of the information judges rely upon to determine an appropriate sentence would be unavailable. Id. at 249. The court determined that requiring open court testimony with cross-examination on every issue relevant to sentencing would be impractical as it would create endless delay and result in retrial of collateral issues. Id.
 {¶ 17} In discussing the federal due-process clause, the Williams
Court stated: "The considerations we have set out admonish us against treating the due-process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. * * * The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts — state and federal — from making progressive efforts to improve the administration of criminal justice." Williams, 337 U.S. at 250-51. We find this discussion instructive in the current case. When determining that the Rules of Evidence did not strictly apply in sexual predator determination hearings, the Supreme Court of Ohio likened sexual predator determination hearings to sentencing or probation hearings. Cook,83 Ohio St.3d at 425. See, also, Evid.R. 101(C)(3). The court recognized that the purpose of a sexual predator determination hearing is to determine an offender's status, not his guilt or innocence. Id.
 {¶ 18} Having considered Shahan's argument, we conclude the court did not violate Shahan's due process rights by admitting the hearsay evidence. See, generally, State v. Bass, Champaign App. No. 2001-CA-26, 2003-Ohio-1031 (finding the court, at the sexual predator determination hearing, properly considered affidavits from two juveniles who claimed defendant had made sexual advances towards them on a prior occasion.) The Ohio Supreme Court's decision in Cook, supra, permits the court to consider reliable hearsay evidence when making its sexual predator determination. Moreover, Shahan had an opportunity to challenge the evidence not subject to cross-examination by presenting his own evidence and witnesses. Because we find no error in the court's decision to admit hearsay evidence regarding other allegations of sexual abuse, Shahan's first assignment of error is overruled.
 {¶ 19} In his second assignment of error, Shahan contends the court's sexual predator determination is against the manifest weight of the evidence.
 {¶ 20} A sexual predator is a person who has been convicted of, or pled guilty to, committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E); State v. Eppinger, 91 Ohio St.3d 158, 163, 2001-Ohio-247,743 N.E.2d 881. Before a court may adjudicate an offender as a sexual predator, it must find each of these elements established by clear and convincing evidence. R.C. 2950.09(B)(3). "Clear and convincing evidence" is evidence that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. SeeCincinnati Bar Ass'n. v. Massengale (1991), 58 Ohio St.3d 121, 122,568 N.E.2d 1222. It is considered a higher degree of proof than a mere "preponderance of the evidence", the standard generally utilized in civil cases; however, it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. See State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, quoting Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 21} When reviewing whether "clear and convincing evidence" supports the trial court's decision, we must examine the record and ascertain whether enough evidence exists to meet this burden of proof. See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613. This type of review is still deferential to the trial court. We will not overturn a trial court's judgment as being against the manifest weight of the evidence if the record contains competent, credible evidence to support it. Schiebel, supra; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273; C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 22} Because the jury convicted Shahan of gross sexual imposition, he meets the first prong of the "sexual predator" definition. Shahan, however, challenges the court's finding that he is likely to commit a future sexually oriented offense, the second prong of the "sexual predator" definition.
 {¶ 23} When determining whether an offender should be classified as a sexual predator, a court must consider all relevant factors, including those listed in R.C. 2950.09(B)(2). Eppinger, 91 Ohio St.3d at 164. A trial court should discuss on the record the particular evidence and factors upon which it relies to support its decision that recidivism is likely. Id. at 166-67. However, a trial court is not required to express its reasoning or make explicit findings on all criteria listed in the statute. It need only consider and address the relevant factors. The R.C. 2950.09(B)(2) factors are: "(a) The offender's age; (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (g) Any mental illness or mental disability of the offender; (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (i) Whether the offender, during the commission of the sexually oriented offense, displayed cruelty or made one or more threats of cruelty; (j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 24} A court is under no obligation to "tally up" the R.C.2950.09(B)(2) factors in any fashion. State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13. A court may classify an offender as a "sexual predator" even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually oriented offense. Id.
 {¶ 25} Having reviewed the record, we find there is substantial competent, credible evidence to support the court's sexual predator determination. At the time of the offense, Shahan was forty years old. The presentence investigation report indicates that he has previous adult convictions, although this is his first sexual offense conviction. While his previous convictions are not of a violent nature, they do show a disregard for the law. See State v. McElfresh (July 14, 2000), Washington App. No. 99CA36. For instance, Shahan has been convicted twice for driving while under DUI/OMVI suspension.
 {¶ 26} At the time of the sexual abuse, Lori was only eight years old. We have previously recognized the overwhelming statistical evidence indicating the high potential for recidivism among sex offenders whose crimes involve the exploitation of young children. McElfresh, supra. In abusing Lori, Shahan took advantage of his close relationship with Lori's family and his position as Lori's babysitter. See State v. Keerps,
Washington App. No. 02CA2, 2002-Ohio-4806, at ¶ 15. Moreover, Shahan refuses to accept responsibility for his actions. See Mollohan, supra. In his statement to Detective Warden, Shahan attempted to blame Lori for the incident, stating that she was very flirtatious. When describing the incident to Detective Warden, Shahan indicated that his hand might have ended up on Lori's crotch but that she started rubbing or pressing into his hand At trial, despite his previous statement admitting to the sexual abuse, Shahan denied having touched Lori. Instead, he claimed that Detective Warden had tricked him into confessing.
 {¶ 27} Furthermore, Shahan's daughter and niece both provided written statements indicating that Shahan sexually abused them when they were young. Shahan's daughter indicated that her father sexually abused her when she was twelve and his niece indicated that he sexually abused her when she was thirteen. In addition, the record indicates that Shahan has a serious alcohol problem that he refuses to acknowledge. See Statev. Morris (July 18, 2000), Washington App. No. 99CA47. In his statement to Detective Warden, Shahan indicated that normally when he imbibes, he drinks anywhere from twelve beers to a case of beers. He further indicated that he can drink a twelve-pack of beer without "catching a buzz." The record indicates that alcohol was a factor in the present incident as well as the incidents with Shahan's daughter and niece. At Shahan's sexual predator determination hearing, the defense presented testimony from Dr. J. Michael Harding concerning Shahan's risk of recidivism. On cross-examination, Dr. Harding testified that alcohol acts as a "trigger" for Shahan and increases his risk of re-offending. Finally, Dr. Harding's testimony establishes that Shahan's risk of recidivism is "considerable". According to Dr. Harding, there is, at a minimum, a 45% chance that Shahan will re-offend within a ten-year period.[3]
 {¶ 28} Based on the evidence in the record, we conclude the court did not err in classifying Shahan as a sexual predator as there is plenty of competent, credible evidence supporting the trial court's determination. Accordingly, Shahan's second assignment of error is overruled.
 {¶ 29} In his third assignment of error, Shahan contends he received ineffective assistance of counsel during both his trial and his sexual predator determination hearing. In support of his argument, Shahan points to four instances of counsel's deficient conduct.
 {¶ 30} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient, and, second, that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327,2000-Ohio-166, 731 N.E.2d 645, citing Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Defense counsel's representation must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. Bradley.
Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the trial would have been different. State v. White, 82 Ohio St.3d 16, 23,1998-Ohio-363, 693 N.E.2d 772. If one component of the Strickland test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland; Bradley.
 {¶ 31} First, Shahan contends his counsel was ineffective for failing to object when the state cross-examined him during the trial about other allegations of sexual abuse. In addition, he claims counsel was ineffective for failing to request a limiting instruction at trial once the questioning occurred. He claims counsel's conduct prejudiced him because the court relied on the other allegations of sexual abuse when it sentenced Shahan.
 {¶ 32} During his trial, Shahan took the stand in his own defense. On direct examination, Shahan testified that he did not touch Lori's vagina. He claimed that Detective Warden's questions were designed to steer him towards an expected answer. In essence, he claimed that Detective Warden tricked him into confessing. On cross-examination, the state questioned Shahan about his conversation with Detective Warden. The following exchange took place: "STATE: Mr. Shahan, you've heard the State's Exhibit, the tape we played? SHAHAN: Yes, I have. STATE: And you heard Detective Warden ask you questions and did a little bit, and said, no, this didn't happen, and then did a little bit more and then stopped for a while and then did a little bit more, and then finally, you admitted that you in fact touched her on the vagina. At one place in the statement, you said, "Well, I probably pressed a little hard," and another place, you said, "I was doing it to get pleasure." You did not? SHAHAN: I might have said that on the tape, but like I said, at the time he taped me, for one, he caught me by total surprise. You know, like I said, I had no idea any of this stuff had happened, and when he came and started talking to me, I mean, it just totally unnerved me, blew my mind away there, because I've never been accused of anything with any of the, you know, nieces, nephews, or anything in my life." Immediately after this statement, the state elicited an admission that Shahan's niece had previously accused him of touching her inappropriately. In addition, the state asked Shahan whether his daughter had ever accused him of touching her inappropriately, to which he responded that he did not know if she had or not.
 {¶ 33} Shahan, himself, opened the door to questions regarding the other allegations when he claimed that he had never been accused of this type of thing before. See State v. Koballa, Cuyahoga App. No. 82013, 2003-Ohio-3535, at ¶ 26-28 (Defendant, when asked on cross examination if he was afraid of his co-defendant, answered that his co-defendant had a history on the streets, whereas, he didn't. This opened the door to evidence of defendant's juvenile adjudication for complicity to commit homicide.); State v. Bachtel, Holmes App. No. 99CA011, 2002-Ohio-2528 (Defendant, when asked on direct examination if he was a convicted felon, testified that he had a clean record. This opened the door to cross-examination regarding defendant's prior misdemeanor convictions.). See, also, State v. Broach, Hamilton App. No. C-010233, 2001-Ohio-8745. There was nothing in defense counsel's direct examination that would have opened the door to this evidence. Nor did the state's cross-examination encourage Shahan's statement. Rather, Shahan voluntarily extended his answer beyond that required by the question and, in doing so, opened the door to evidence of the prior allegations. Given that it was Shahan's own conduct that opened the door to this line of questioning, we cannot say counsel's failure to object constituted deficient performance. Such an objection would have been properly overruled.
 {¶ 34} Moreover, counsel may have chosen not to request a limiting instruction as part of a reasonable trial strategy. See State v. Smith
(1991), 75 Ohio App.3d 73, 75-76, 598 N.E.2d 878. State v. Brown, Warren App. No. CA2002-03-026, 2002-Ohio-5455, at ¶ 17; State v. Hester,
Franklin App. No. 02AP-401, 2002-Ohio-6966. Counsel may have believed that a limiting instruction would only serve to draw undue attention to the other allegations of sexual abuse. See Hester. In addition, the state offered the evidence of the other allegations to contradict Shahan's statement that he had never before been accused of inappropriately touching anyone. Therefore, a limiting instruction would have directed the jury to restrict its consideration of the evidence to credibility. Counsel may have believed that requesting such a limiting instruction would only serve to emphasize Shahan's lie, thereby destroying Shahan's credibility. Because counsel's failure to request a limiting instruction could have been part of a reasonable trial strategy, we conclude counsel did not act deficiently.
 {¶ 35} Even if we were to conclude that counsel was ineffective for failing to object or to request a limiting instruction, we are not convinced Shahan suffered prejudice as a result. Shahan does not argue that the outcome of his trial would have been different if counsel had objected to the evidence or requested a limiting instruction. Rather, he contends the outcome of his sentencing hearing would have been different. However, a review of the sentencing entry indicates the court did not rely on the other allegations in imposing sentence. Because the sentencing entry justifies the sentence imposed without relying on the other allegations, we conclude Shahan has not demonstrated prejudice.
 {¶ 36} Second, Shahan contends defense counsel was ineffective for failing to object to Mrs. Johnston's testimony about how Lori's behavior changed after the incident. He contends that because the state did not present an expert to testify about behavioral clues associated with sexual molestation, counsel should have objected to Mrs. Johnston's testimony. Shahan contends counsel's failure to object to Mrs. Johnston's testimony prejudiced him because the court relied on the testimony in sentencing him. He points to the court's finding that Lori suffered psychological damage as a result of the incident.
 {¶ 37} Mrs. Johnston testified that before Lori told her about the sexual abuse, Lori "was getting more attitude" and was "having more conflict with situations." She testified that Lori's attitude has been "getting better" since Lori told her about the sexual abuse. Mrs. Johnston also testified that Lori used to receive straight As, but during the first half of the 2001/2002 school year, Lori received Fs. According to Mrs. Johnston, Lori's grades have been improving since Lori disclosed the sexual abuse.
 {¶ 38} Shahan cites no authority to support his argument that expert testimony is required to show the effects of sexual abuse on the victim. Evid.R. 602 allows lay witnesses to testify about matters within their personal knowledge. An individual has personal knowledge of a matter when the individual gains the knowledge through firsthand observation or experience. Bonacorsi v. Wheeling Lake Ry. Co.,95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 26, citing Black's Law Dictionary (7 Ed.Rev. 1999) 875. Mrs. Johnston's testimony concerning the changes in Lori's behavior was based on her firsthand observations. Her testimony was far more descriptive than it was diagnostic. In fact, her testimony simply described the differences that she noticed in Lori's behavior both before and after Lori told her about the sexual abuse. Because trial counsel is not required to make futile or meritless objections, see State v. Mitchell (1988), 53 Ohio App.3d 117,119, 559 N.E.2d 1370, we conclude defense counsel did not act ineffectively by failing to object to Mrs. Johnston's testimony concerning the changes in Lori's behavior.
 {¶ 39} Third, Shahan contends counsel was ineffective for failing to correct inconsistencies in Dr. Harding's testimony regarding his risk of recidivism. He contends failure to correct these inconsistencies prejudiced him because the court relied on Dr. Harding's testimony in labeling him a sexual predator.
 {¶ 40} Prior to Shahan's sexual predator determination hearing, defense counsel retained the services of a psychologist, Dr. J. Michael Harding, to assess Shahan's risk of recidivism. Dr. Harding submitted a report to the court in which he indicated that Shahan's sex offense recidivism rate within a six-year period was 16%. He based this opinion on the results of the Minnesota Sex Offender Screening Tool-Revised (MnSORT-R) and the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR). Dr. Harding's report also contained a section identifying the clinical risk factors associated with sexual offending. In that section, Dr. Harding indicated the clinical risk factors that applied to Shahan.
 {¶ 41} After submitting his report, however, Dr. Harding contacted the court and the parties to inform them that his report was inaccurate because he did not consider all the material. Thus, the defense called Dr. Harding to testify at the sexual predator determination hearing so he could clarify his report. At the hearing, Dr. Harding testified that he learned of the sexual abuse allegations of Shahan's niece and daughter after he had conducted his evaluation. He indicated that after learning of the additional allegations, he re-administered the MnSORT-R. However, he indicated that the MnSORT-R only accounts for actual indictments or charges. Thus, because Shahan's daughter and niece did not report the sexual abuse and Shahan was not charged, Dr. Harding testified that Shahan's score did not change. If, however, Shahan had been charged with those offenses, Dr. Harding indicated that Shahan would have, at a minimum, a 45% recidivism risk rate under the MnSORT-R. Dr. Harding further testified that looking only at the clinical risk indicators, and not at the score on the MnSORT-R, he would consider Shahan's risk of recidivism against "females that he knows very well who are 14, 13 years or younger, to be considerable." When asked to describe Shahan's risk rate in terms of percentages, Dr. Harding testified: "I would say, again, at least — at the very least, a 45% recidivism risk rate, and possibly — and — probably higher." He later indicated that this figure represented Shahan's sex offense recidivism rate within a ten-year period.
 {¶ 42} A review of the transcript of Dr. Harding's testimony does not reveal inconsistencies in his testimony. Dr. Harding specifically testified that his ultimate conclusion was based on the clinical risk indicators, not the MnSORT-R. Dr. Harding's testimony is not inconsistent simply because his final conclusion regarding Shahan's recidivism risk rate, i.e. that Shahan has, at a minimum, a 45% risk rate, is the same as Shahan's hypothetical risk rate under the MnSORT-R.[4] Shahan contends Dr. Harding testified that he could not rely on the other allegations because they had not been verified by the legal process. Our review of the record reveals no such general statement on Dr. Harding's part. Rather, the transcript indicates Dr. Harding testified he could not consider the allegations under the MnSORT-R because the test only accounts for charged offenses. Because we find no inconsistencies in Dr. Harding's testimony, we conclude defense counsel was not ineffective for failing to object to Dr. Harding's conclusion regarding Shahan's recidivism risk rate.
 {¶ 43} Finally, Shahan contends defense counsel was ineffective for failing to object to the admission of hearsay evidence regarding other allegations of sexual abuse at his sexual predator determination hearing. He contends counsel's failure to object prejudiced him because the court relied on the additional allegations in labeling him a sexual predator. In addition, he contends his counsel was ineffective for failing to object to Dr. Harding's testimony regarding a letter that Shahan had allegedly written to his niece. He claims the court also relied on the testimony concerning the contents of the letter when it labeled him a sexual predator.
 {¶ 44} Based on our resolution of Shahan's first assignment of error, we conclude defense counsel's failure to object to the admission of hearsay evidence regarding other allegations of sexual abuse did not constitute ineffective assistance of counsel. As we noted in our response to the second argument under this assignment of error, counsel is not required to make futile or meritless objections. See State v. Mitchell
(1988), 53 Ohio App.3d 117, 119, 559 N.E.2d 1370.
 {¶ 45} We also conclude that Shahan suffered no prejudice from defense counsel's purported ineffectiveness in failing to object to Dr. Harding's testimony about the contents of Shahan's letter to his niece. During cross-examination of Dr. Harding, the state asked that he read aloud a portion of a letter allegedly written by Shahan to his niece. According to Dr. Harding's testimony, the letter stated: "`I got three years for what Lori said. Now, you probably don't believe me, but I never touched her in that way. My god, she was only eight years old, not 14 or 15.'". The state then asked Dr. Harding, based on his evaluation of Shahan and his training and experience, what the phrase "not 14 or 15" indicated. In response, Dr. Harding testified that the phrase "is expressing a belief that a girl 14 or 15 years of age would be appropriate for a sex partner or to be touched in a sexually-oriented manner." Later, the state moved to have Shahan's letter admitted into evidence. At that point, defense counsel objected on authentication grounds. The court ruled that the letter would not be admitted into evidence but that the testimony itself could be considered since it had not been objected to.
 {¶ 46} Even if we were to find that defense counsel should have objected to Dr. Harding's testimony about the letter, we are not convinced that the result of Shahan's sexual predator determination hearing would have been different if counsel had objected. There is no evidence that the court relied on Dr. Harding's testimony regarding the contents of the letter when it classified Shahan as a sexual predator. Shahan points to the court's statement regarding his interest in "young (underage) sexual partners" as proof that the court relied on the testimony concerning the letter. However, this statement could be based on the nature of the current offense and the other allegations. At the time Shahan sexually abused Lori, she was eight years old. According to Shahan's daughter's statement, she was twelve when her father sexually abused her. And Shahan's niece's statement indicated that she was thirteen when Shahan sexually abused her. Moreover, as is evident from our review of Shahan's second assignment or error, there is substantial evidence, even without the testimony regarding the letter, to support the court's sexual predator determination. Thus, we conclude Shahan did not suffer prejudice as a result of defense counsel's failure to object to testimony regarding the contents of the letter Shahan allegedly wrote. Accordingly, we find that Shahan's third assignment of error lacks merit.
 {¶ 47} In summary, we conclude the court's admission of hearsay evidence regarding other allegations of sexual abuse at Shahan's sexual predator determination hearing did not violate Shahan's constitutional rights. In addition, we conclude there is competent, credible evidence in the record to support the court's sexual predator determination. Finally, we conclude Shahan has failed to establish that he received ineffective assistance of counsel during either his trial or his sexual predator determination hearing. Thus, we affirm the judgment of the trial court.
Judgment Affirmed.
Evans, P.J. and Kline, J., concur in Judgment and Opinion.
[1] According to the evidence presented at trial, this overnight visit occurred during the summer of 2000.
[2] The pre-sentence investigation report also contains information regarding the other sexual abuse allegations. Shahan's brief, however, does not mention the pre-sentence investigation report. Rather, his argument is directed towards the victims' written statements and Detective Warden's testimony.
[3] Shahan's argument under this assignment of error takes issue with Dr. Harding's conclusion, arguing that there are inconsistencies in his testimony. We have addressed this issue in Shahan's third assignment of error and find no inconsistencies in Dr. Harding's testimony.
[4] When referring to Shahan's "hypothetical" risk rate, we are referring to the recidivism risk rate Shahan would have under the MnSORT-R if he had been charged with the sexual abuse of his daughter and niece.