[Cite as *State v. Rizer*, 2011-Ohio-5702.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA3 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| PAULA S. RIZER, | : | |
| | : | **RELEASED 10/27/11** |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Timothy Young, State Public Defender; Craig M. Jaquith, Assistant State Public Defender; and Melissa Prendergast, Assistant State Public Defender, Columbus, Ohio, for appellant.

Colleen S. Williams, Meigs County Prosecutor, and Matthew Donahue, Meigs County Assistant Prosecutor, Pomeroy, Ohio, for appellee.
_____
Harsha, P.J.

**{¶1}** A jury found Paula Rizer guilty of one count of murder with a firearm specification based upon an incident in which Mrs. Rizer purportedly shot and killed her husband, Kenneth Rizer. Mrs. Rizer claimed that she suffered from battered-woman syndrome and shot her husband in self-defense. She now appeals her conviction and sentence.

**{¶2}** Mrs. Rizer contends that the trial court erred by admitting the testimony of the State's expert forensic psychiatrist who examined her because the testimony violated her right against self-incrimination. Specifically, she analogizes this case to *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075 and complains that the expert testified about alleged inconsistencies in her accounts of the shooting, making him essentially an agent of the State recounting unMirandized statements made

in a postarrest custodial setting.  However, we need not address this argument because the testimony of Mrs. Rizer's own expert psychologist, who claimed that Mrs. Rizer did not give inconsistent accounts of the shooting, opened the door to the testimony by the State's expert.

{¶3}    Next, Mrs. Rizer claims that the trial court abused its discretion when it concluded that her seven-year old granddaughter was incompetent to testify.  Because some evidence supports the court's conclusion that the child lacked the emotional ability to communicate about her grandparents at trial, we cannot find the court's decision unreasonable, unconscionable, or arbitrary.

{¶4}    Mrs. Rizer also argues that the trial court committed plain error by giving the jury an improper instruction on self-defense.  First, Mrs. Rizer's trial attorney requested this instruction, thereby inviting any potential error it might contain.  Second, when the jury charge is viewed as a whole, the instruction is a correct statement of law.  Thus, we also reject Mrs. Rizer's separate contention that trial counsel rendered ineffective assistance concerning this jury instruction.

{¶5}    Mrs. Rizer also contends that counsel rendered ineffective assistance by not objecting to testimony from the State's expert forensic psychiatrist, requesting a voluntary manslaughter instruction, and seeking redaction of certain statements a BCI agent made in a recorded interview of her.  However, an objection to the expert testimony would have been futile since Mrs. Rizer opened the door to this testimony through the testimony of her own expert on her inconsistent statements.  Moreover, trial counsel's use of an expert to explain the inconsistent statements constituted a reasonable trial strategy.  In addition, Mrs. Rizer cannot overcome the presumption that

counsel did not seek the jury instruction as part of trial strategy. And even if counsel was deficient for not seeking redaction of the statements, Mrs. Rizer has not shown prejudice from them. Therefore, we reject her arguments.

{¶6}    Next, Mrs. Rizer complains that the court ordered her to pay costs of prosecution but failed to advise her that if she failed to pay them, the court could order her to perform community service. The State concedes that the court failed to give Mrs. Rizer this notice. Therefore, we vacate the imposition of costs of prosecution from the sentence and remand for resentencing on this point.

{¶7}    Mrs. Rizer also contends that the court erred when it ordered her to pay $10,000 restitution for funeral and burial expenses. First, she argues that the court failed to consider her present and future ability to pay this sanction. However, at the sentencing hearing the prosecutor advised the court that the State believed Mrs. Rizer had assets in the form of property and a bank account. Evidence from the trial shows that Mrs. Rizer and her husband had over $100,000 in assets. Thus, we reject this argument. However, we agree with Mrs. Rizer's complaint that the record only supports a restitution order of $9,200. Therefore, we vacate the restitution order and remand so the trial court can impose a restitution order in the proper amount.

{¶8}    Finally, Mrs. Rizer argues that the court abused its discretion by ordering her to pay costs of confinement because she cannot pay them. But in light of the evidence of her assets adduced at trial, we cannot say the court's decision was unreasonable, unconscionable, or arbitrary.

## I. Facts

{¶9}    A grand jury indicted Mrs. Rizer on one count of aggravated murder with a

firearm specification for allegedly shooting and killing her husband. Mrs. Rizer claimed that she suffered from battered-woman syndrome and shot her husband in self-defense. After Mrs. Rizer's first trial, a jury found her not guilty on the aggravated murder charge but could not reach a unanimous verdict on the lesser-included offense of murder with a firearm specification. After her second trial, a jury found Mrs. Rizer guilty of murder with a firearm specification. This appeal followed.

## II. Assignments of Error

{¶10} Mrs. Rizer assigns five errors for our review:

The testimony of the State's forensic psychologist violated Paula Rizer's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and by Section 10, Article I of the Ohio Constitution. (Tr. VI, v.1, pp.232-49; Tr. VI, v.2, pp.3-36; Tr. VII, v.1, pp.193, 203; Tr. VII, v.2, p.8.)

The trial court abused its discretion when it prohibited the defense from calling [R.C.] as a witness. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution; Evid. R. 601(A). (Tr. III, v.1, pp.144-91; Tr. V, v.2, pp.12-13.)

The trial court erred in its instructions to the jury on the law of self-defense in a case in which a battered-woman syndrome instruction is also given, and thereby deprived Mrs. Rizer of her right to a fair trial before a properly instructed jury, and of her right to due process of law, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution. (Tr. VIII, pp. 3-21.)

The performance of trial counsel was deficient, and deprived Mrs. Rizer of the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution. (Tr. IV, pp.9-10; Tr. VI, v.1, pp.232-49; Tr. VI, v.2, pp.3-36; Tr. VII, v.1, pp.193, 203; Tr. VII, v.2, p.8; Tr. VIII, pp. 3-21; Tr. of Interview with BCI Agent Willis, pp.10-11, 40.)

The trial court erred by ordering Paula Rizer to pay restitution in the amount of $10,000, court costs in the amount of $17,000, and the costs of local confinement in the amount of $17,580 without following the applicable statutes governing imposition of those fines and costs. R.C.

2929.18; R.C. 2929.19; R.C. 2947.23(A)(1); Fourteenth Amendment to the United States Constitution; Section 16, Article I of the Ohio Constitution. (January 29, 2010 Sentencing Entry; Sent. Tr. pp. 11-23.)

### III.  Expert Testimony on Battered-Woman Syndrome

**{¶11}**  "Self-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"  *State v. Goff*, supra, at ¶36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339 and citing R.C. 2901.05.

**{¶12}**  Battered-woman syndrome refers to "the characteristics and symptoms associated with women who are battered by their spouses or significant others."  *State v. Nemeth*, 82 Ohio St.3d 202, 205, 1998-Ohio-376, 694 N.E.2d 1332.  This syndrome is not a new defense or justification for the commission of a crime in Ohio.  See *Goff* at ¶35.  However, expert testimony on battered-woman syndrome is admissible as evidence to prove the second element of self-defense, i.e. to "assist the trier of fact to determine whether the defendant acted out of an honest belief that she [was] in imminent danger of death or great bodily harm and that the use of such force was her only means of escape."  Id. at ¶37, quoting *State v. Koss* (1990), 49 Ohio St.3d 213, 551 N.E.2d 970, at paragraph three of the syllabus.

**{¶13}**  "After *Koss,* the General Assembly recognized in R.C. 2901.06 that battered-woman syndrome 'is a matter of commonly accepted scientific knowledge' and that 'the subject matter and details of the syndrome are not within the general

understanding or experience of a person who is a member of the general populace and are not within the field of common knowledge.'"  Id. at ¶39, quoting R.C. 2901.06(A)(1) and (A)(2).  R.C. 2901.06(B) provides that:  "If a person is charged with an offense involving the use of force against another and the person, as a defense to the offense charged, raises the affirmative defense of self-defense, the person may introduce expert testimony of the 'battered woman syndrome' and expert testimony that the person suffered from that syndrome as evidence to establish the requisite belief of an imminent danger of death or great bodily harm that is necessary, as an element of the affirmative defense, to justify the person's use of the force in question."

{¶14}  When a defendant demonstrates an intention to use expert testimony on battered-woman syndrome to prove the second element of self-defense, "a court may compel the defendant to submit to an examination by another expert without violating the defendant's [right against self-incrimination] under Section 10, Article I of the Ohio Constitution and the Fifth Amendment to the United States Constitution."  Goff at ¶58. "By putting her mental state directly at issue and introducing expert testimony based upon her own statements to the expert, the defendant opens the door to a limited examination by the state's expert concerning battered-woman syndrome and its effect on the defendant's behavior.  Courts have the inherent authority to preserve fairness in the trial process, and allowing the defendant to present expert testimony on the specific effects of battered-woman syndrome on the defendant while denying the prosecution the ability to introduce such evidence would unfairly handicap the prosecution and prevent the trier of fact from making an informed decision."  Id.  However, "[t]he paramount concern of fairness of the trial requires only that the state be given the same

opportunity to present testimony on battered-woman syndrome as the defendant." Id. at ¶59.

**{¶15}** In her first assignment of error, Mrs. Rizer acknowledges that the trial court could compel her to submit to an examination by the State's expert forensic psychologist, Dr. Robert Stinson, because she intended to use and did use expert testimony on battered-woman syndrome at trial. However, she contends that Stinson's testimony went beyond what was necessary to provide a level playing field between the State and the defense and violated her right against self-incrimination. Mrs. Rizer analogizes our facts to the Supreme Court of Ohio's recent decision in *Goff.*

**{¶16}** However, we need not address Mrs. Rizer's constitutional argument or compare this case to *Goff* because we agree with the State's contention that testimony from defense expert psychologist Carla Fischer opened the door to Stinson's testimony on "inconsistencies" in the version of events Mrs. Rizer gave. See *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396 (explaining that an appellate court should "not reach constitutional issues unless absolutely necessary"). Unlike the defense expert in *Goff*, Fischer went beyond diagnosing the accused with battered-woman syndrome. Through Fischer, Mrs. Rizer tried to offer the jury an explanation for variances in the story she told different people of the shooting. Fischer testified about the distinction between a normal memory and a traumatic memory. According to Fischer, with a traumatic memory "the memory is fragmented into pieces from the very outset." The brain stores those pieces in different locations and does not "necessarily label" those pieces as what they are. Fischer likened compiling the pieces to gluing together a shattered vase. She testified that "typically, it takes a long time for victims to be able to

put a complete picture of the traumatic memory together."

{¶17} Fischer testified that she listened to the audiotapes of Mrs. Rizer's two interviews with police after the shooting. She testified that the traumatic memory process impacted Mrs. Rizer's ability to recall facts during those interviews and that it was "extremely unlikely" that her memory of the shooting was "pieced together during that time." Fischer claimed that she observed Mrs. Rizer engage in the process of putting her memory of the shooting back together during her evaluation. On cross-examination when the prosecutor questioned the consistency between Mrs. Rizer's version of events during the police interviews and the version she gave later, Fischer testified that "the information she provided was part [sic], she's not providing inconsistent information, she provided some information and then additional information that was completely consistent with what she said, it was just in addition." On re-direct examination, defense counsel asked Fischer how the information Mrs. Rizer gave her compared to information she gave people before working through the traumatic memory recovery process with Fischer. Fischer testified:

> Um I feel that what she had reported earlier was some of the basic things that had happened during the shooting. And what happened as she recovered her memory is that she reported more details including what she remembered about things looked [sic], what she remembered about what she felt, what she remembered about what she thought and some of the smaller details of the events and the sequence that the events happened."

Then the following exchange occurred:

> Q: Doctor Fischer, you indicated that the fact Paula said that the gun just kept going off uh is relevant to you, please explain to the jury what that relevance is.
>
> [A]: I think it's relevant for understanding her state of mind shortly after the traumatic event happened. And shortly after a traumatic event,

someone isn't able to articulate very well the nature of something that just happened when that very powerful psycho physiological response happens in response to fight or flight and there's this flood of adrenaline and hormones in the system, it takes a while [sic] before that process calms down enough so that the person, the person's cognitive processing including the ability to relate what just happened actually returns to them. So in other words, at that, to me that statement reflected what she thought at the time and it also reflects I think the confusion that's typical for someone who's just experienced a traumatic event. I think she's trying to figure out what happened. She's not really sure of what happened or she's not able to necessarily articulate what she knows what happened and to me that statement is very typical of what someone would say if they were confused and very hysterical or emotional aroused [sic] as well.

Q: Doctor Fischer, if the interview by Sergeant Trussell and the interview by Agent Willis, either individually or collectively, were described or labeled as an opportunity to explain what had happened just hours earlier, from a psychological perspective is an opportunity to explain an accurate uh term or label?

A: Not for someone who's just been through a traumatic event because their cognitive processing hasn't returned to normal and their emotional arousal is very high and both of those are situations in which somebody may not be able to explain all or even part or all what has just happened to them [sic].

{¶18} Stinson contradicted Fischer's testimony that Mrs. Rizer did not give inconsistent reports of the shooting. As an alternative to Fischer's traumatic memory theory, he offered "malingering" as a possible explanation for the different details in Mrs. Rizer's reports, i.e. Mrs. Rizer may have intentionally produced or exaggerated self-serving information in her later reports. Stinson also critiqued Fischer's methodology because she concluded Mrs. Rizer had a traumatic memory of the shooting without performing tests with validity scales to evaluate whether Mrs. Rizer was exaggerating or fabricating symptoms. Given Fischer's testimony on the traumatic memory process as a rationale for "inconsistencies"/different levels of detail in Mrs. Rizer's statements, we conclude Mrs. Rizer opened the door to Stinson's testimony. See *State v. Conway*, 109

Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶¶77-78.  Accordingly, we overrule

Mrs. Rizer's first assignment of error.

IV.  Child's Competence to Testify

**{¶19}**  In her second assignment of error, Mrs. Rizer contends that the trial court

abused its discretion when it found her seven-year old granddaughter, R.C.,

incompetent to testify at trial.  Evid.R. 601(A) states:  "Every person is competent to be

a witness except:  * * * children under ten years of age, who appear incapable of

receiving just impressions of the facts and transactions respecting which they are

examined, or of relating them truly."  "In such cases, the burden falls on the proponent

of the witness to establish that the witness exhibits certain indicia of competency."

*State v. Clark*, 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331.

**{¶20}**  Thus, "[i]t is the duty of the trial judge to conduct a voir dire examination of

a child under ten years of age to determine the child's competency to testify."  *State v.*

*Frazier* (1991), 61 Ohio St.3d 247, 250-251, 574 N.E.2d 483.  "In determining whether a

child under ten is competent to testify, the trial court must take into consideration (1) the

child's ability to receive accurate impressions of fact or to observe acts about which he

or she will testify, (2) the child's ability to recollect those impressions or observations,

(3) the child's ability to communicate what was observed, (4) the child's understanding

of truth and falsity and (5) the child's appreciation of his or her responsibility to be

truthful."  Id. at syllabus.  Because the trial judge "has the opportunity to observe the

child's appearance, his or her manner of responding to the questions, general

demeanor and any indicia of ability to relate the facts accurately and truthfully[,]" we will

not reverse the court's competency determination absent an abuse of discretion.  Id. at

251. The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

{¶21} Mrs. Rizer contends that the trial court abused its discretion when it found R.C. incompetent to testify because the court failed to consider the *Frazier* factors and "made up a new test" for competency – "whether or not a witness would be saddened by having to testify." (Appellant's Br. 17). However, a trial court is not required to make express findings on the *Frazier* factors. *Schulte v. Schulte*, 71 Ohio St.3d 41, 43, 1994-Ohio-459, 641 N.E.2d 719. "Such a requirement would unduly burden our trial courts with unnecessary formality. Instead, the trial court is merely required to *consider* the *Frazier* factors while making the competency determination." Id. R.C.'s testimony gives some indication of her general ability to receive and recollect accurate impressions of fact or observations and her ability to understand truth and falsity and appreciate her responsibility to be truthful. And contrary to Mrs. Rizer's assertion, the record does not support a finding that the trial court simply found the child incompetent to testify because she was "sad." Instead, the trial court's comments reflect the court's conclusion that the child was unable to *communicate* about the relevant subject matter (her grandparents), i.e. the third *Frazier* factor.

{¶22} During questioning, R.C. began to cry after she identified Mrs. Rizer in the courtroom and needed a recess to compose herself. When questioned about whether her mother told her where Mrs. Rizer had been, the child testified, "I've been, I don't really like to talk about it. And it gets me all sad." R.C. acknowledged that her mother told her "what was going on." But when asked what her mother told her, the child

testified, "I don't really like to talk about it."  She also testified, "It makes me get all teary-eyed."  When asked whether she would "be able to talk about it when  * * * in Court" the child testified, "No, I can't talk about it then it gets me all sad."  Later the trial judge asked the child:  "Are you going to be able to tell whether you're, are you going to be able to tell about what happened in the, I don't know why, what's she going to testify.  Are you going to be willing to talk about your grandpa and your grandma without crying?"  R.C. testified, "I think."  But when defense counsel asked the child if she could promise him that she would "try to do the best to say what happened" the child said she could not promise.  R.C. testified, "I can't, I can't, I can trust you but I just can't talk about it.  It makes me sad."

{¶23}  After voir dire ended the court stated:  "As it stands now, [R.C.] shouldn't testify unless she can say that she can testify * * * that would be the ruling on that."  When defense counsel sought clarification of the court's ruling, the court stated, "I haven't found her competent to testify when she says she can't testify about the subject."  After defense counsel questioned the court's rationale, the court explained:  "The only issue, the only thing I made a ruling on at this point in time is that she said that she can't uh recall or won't testify to the events of what they're saying and I don't know what she's going to testify to but uh so it won't do any good to call her if she can't tell us anything that's relevant."  Subsequently Mrs. Rizer filed a "PROFFER OF ANTICIPATED TESTIMONY BY [R.C.]" and argued that the child only testified that she did not know whether she would be able to talk about the events on the day of the shooting.  Mrs. Rizer claimed she would not question the child about that day because the child had no personal knowledge about the shooting and would only question her

about the relationship between her grandparents and Mrs. Rizer's response to interactions with her husband. However, the trial court did not alter its previous ruling, presumably because the child indicated her inability to communicate about her grandparents in general, not simply an inability to discuss the day of the shooting.

{¶24} We cannot say that the trial court acted in an unreasonable, unconscionable, or arbitrary manner when it concluded that R.C.'s inability to communicate about her grandparents rendered her incompetent to testify. After identifying Mrs. Rizer, the child needed a break from questioning to compose herself. Following the break, the child repeatedly expressed her inability to speak about her grandparents without getting upset. Moreover, unlike this Court, the trial court had the benefit of observing the child's appearance, manner of responding to the questions, and general demeanor in evaluating the child's capacity to testify about her grandparents. Under these circumstances, we cannot say that the trial court abused its discretion when it disallowed R.C.'s testimony. We overrule Mrs. Rizer's second assignment of error.

## V. Jury Instructions

{¶25} In her third assignment of error, Mrs. Rizer contends that the trial court failed to properly instruct the jury on self-defense. R.C. 2945.11 requires a trial court to charge the jury with all the law required to return a verdict. Generally, a trial court should give a requested jury instruction if it is a correct statement of the law as applied to the facts of the particular case. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828. Our review concerning whether jury instructions correctly state the law is de novo. *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at

¶34.  However, reversible error should not be predicated upon one phrase or one sentence in a jury charge; instead, a reviewing court must consider the jury charge in its entirety.  *State v. Porter* (1968), 14 Ohio St.2d 10, 13, 235 N.E.2d 520.  Moreover, if an instruction correctly states the law, its precise wording and format are within the trial court's discretion.  *Brown* at ¶34.  And because Mrs. Rizer did not object to the court's instructions, she waived all but plain error.  *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, at ¶25.

{¶26}  According to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  For a reviewing court to find plain error:  1.) there must be an error, i.e., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.  Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.  Moreover, "[a] silent defendant has the burden to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights."  *State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶22, citing *United States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

{¶27}  Mrs. Rizer complains that the court's charge on self-defense erroneously

included the following statement: "Words alone do not justify the use of deadly force. Resort to such force is not justified by abusive language, verbal threats[,] or other words, no matter how provocative." However, Rizer included this statement in the "PROPOSED JURY INSTRUCTIONS AND MEMORANDUM IN SUPPORT" she submitted to the trial court. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 1998-Ohio-329, 692 N.E.2d 198 (per curiam). Because Mrs. Rizer requested the complained of instruction, she invited any potential error in the trial court's use of it. See generally *State v. Johnson* (Mar. 6, 1995), Athens App. No. 93CA1601, 1995 WL 116680. Therefore, we overrule her third assignment of error.

{¶28} However, in her fourth assignment of error, Mrs. Rizer claims in part that counsel rendered ineffective assistance by not requesting proper jury instructions. To prevail on a claim of ineffective assistance of counsel, an appellant must show that: 1.) his counsel's performance was deficient, and 2.) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶205, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. Id. The appellant has the burden of proof on the issue of counsel's

ineffectiveness because a properly licensed attorney is presumed competent.  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶62.

**{¶29}**  Mrs. Rizer claims that the "words alone" instruction constitutes "an improper statement of Ohio law in battered-offender self-defense cases [because] it wrongly led the jurors to conclude the Mr. Rizer *had* to be attacking [her] * * * in order for her to successfully assert self-defense as a battered woman."  (Appellant's Br. 20). In essence, Mrs. Rizer contends the instruction falsely led the jury to believe that she could not have a bona fide belief that she was in imminent danger of death or great bodily harm unless Mr. Rizer in fact attacked her.  She points to the factual circumstances of various Supreme Court of Ohio cases involving battered-woman or battered-child syndrome as evidence that an accused can have a bona fide belief of imminent danger in the context of a non-confrontational attack.  For example, she cites *Nemeth*, supra, where the defendant claimed he shot his abusive mother while she laid on a couch after threatening to kill him and unsuccessfully attempting to get in his bedroom for several hours.  In finding that the trial court erred by disallowing expert testimony on battered-child syndrome, the Court specifically noted that "[e]xpert testimony is * * * necessary to dispel the misconception that a nonconfrontational killing cannot satisfy the elements of self-defense * * *."  *Nemeth* at 209.

**{¶30}**  We disagree with Mrs. Rizer's characterization of the jury instruction.  The trial court never instructed the jury that it could only conclude Mrs. Rizer acted in self-defense if her husband physically attacked her.  The court simply instructed the jury that a victim's words alone cannot justify the use of deadly force against that person.  The Supreme Court of Ohio has stated that "words alone will not constitute reasonably

sufficient provocation to incite the use of deadly force in most situations." *State v. Shane* (1992), 63 Ohio St.3d 630, 637, 590 N.E.2d 272. "The circumstances surrounding such language or words goes to the issue of whether a defendant had an honest belief that he [or she] was in imminent danger of death or great bodily harm." *State v. DiPaolo* (July 1, 1994), Belmont App. No. 92-B-55, 1994 WL 326344, at *2. For example, devoid of its context even a statement like "I am going to kill you" might not create a bona fide belief of imminent danger of death or great bodily harm. But a review of the entire self-defense charge reveals that the trial court specifically instructed the jury to consider the circumstances surrounding the shooting. The court instructed the jurors: "[Y]ou must put yourself in the position of the Defendant, Paula Rizer. With her characteristics, her knowledge or lack of knowledge and under the circumstances and conditions surrounding her at the time. You must consider the conduct of Kenneth Rizer and decide whether his acts or words caused Paula Rizer reasonably and honestly to believe that she was about to be killed or receive great bodily harm."

**{¶31}** Therefore, we conclude that the trial court properly gave the jury the "words alone" instruction in conjunction with other portions of its charge. Thus, trial counsel was not deficient for requesting the instruction. We overrule Mrs. Rizer's fourth assignment of error to the extent she contends counsel rendered ineffective assistance in this regard.

VI.  Ineffective Assistance of Counsel

**{¶32}** In her fourth assignment of error, Mrs. Rizer raises several other ineffective assistance of counsel arguments. We set forth the standard of review for such claims in Section V of the opinion.

A.  Failure to Object to Stinson's Testimony

**{¶33}**  Mrs. Rizer contends that trial counsel rendered ineffective assistance by not objecting to Stinson's testimony under the Fifth Amendment.  However, we determined in Section III that Mrs. Rizer opened the door to Stinson's testimony by way of Fischer's testimony on the inconsistencies in her version of events.  And "counsel is not required to make futile or meritless objections."  *State v. Shahan*, Washington App. No. 02CA63, 2003-Ohio-6945, at ¶44.  Moreover, trial counsel's decision to use Fischer to explain the inconsistencies in Mrs. Rizer's statements was a reasonable trial strategy, so it could not amount to a deficient performance.  Therefore, we reject this argument.

B.  Failure to Request Voluntary Manslaughter Instruction

**{¶34}**  Next, Mrs. Rizer argues that trial counsel should have sought a jury instruction on voluntary manslaughter.  Although she claimed to be a battered-woman acting in self-defense, Mrs. Rizer contends that it "would have been entirely reasonable for the jury to determine that the actions of Mr. Rizer provoked [her] into a rage or sudden passion that led her to shoot at him."  (Appellant's Br. 26).  She argues that this conclusion would have been consistent with the State's claim that she was "angry."

**{¶35}**  Voluntary manslaughter is an inferior degree of murder.  *Shane*, supra, at 632.  "Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought."  Id.  But even if we assume Mrs. Rizer qualified for a voluntary manslaughter instruction, she has not overcome the presumption that, under the circumstances, counsel's decision to not request the

instruction might be considered sound trial strategy. See *State v. Thompson*, Franklin App. No. 07AP-491, 2008-Ohio-2017, at ¶23. Where the record is silent, as it is here, about the reason counsel failed to request an instruction on voluntary manslaughter as an inferior degree of murder, we must presume the decision was trial strategy rather than guessing it was negligence. See generally *State v. Griffie*, 74 Ohio St.3d 332, 1996-Ohio-71, 658 N.E.2d 764.

{¶36} Mrs. Rizer contends that we cannot view trial counsel's decision as an objectively reasonable trial strategy because jurors in the first trial voted 11-1 to convict her of murder. Presumably, Mrs. Rizer argues that trial counsel should have anticipated that the second jury would reject a self-defense argument because the first jury nearly did. Thus counsel should have requested a voluntary manslaughter instruction as a backup plan. We do not think that conclusion necessarily follows.

{¶37} Regardless of Mrs. Rizer's near conviction in the first trial, counsel reasonably could have pursued an "all or nothing" strategy at the second trial, armed with the experience of the first trial and faced with a new jury. A request for a voluntary manslaughter instruction would have been inconsistent with that strategy. The "difficulty in attempting to argue both provocation, as is necessary for voluntary manslaughter, and self-defense is that to an extent those defenses are inconsistent * * *. Self-defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage." *State v. Caldwell* (Dec. 17, 1998), Franklin App. No. 98AP-165, 1998 WL 890232, at *7, quoting *State v. Thompson* (Feb. 23, 1993), Franklin App. No. 92AP-1124, 1993 WL 51114. And "[t]actical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel." *In re*

*Wingo*, 143 Ohio App.3d 652, 668, 2001-Ohio-2477, 758 N.E.2d 780, citing *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965.  Thus, we reject Mrs. Rizer's argument.

### C.  Failure to Seek Redaction of Statements

**{¶38}**  Next, Mrs. Rizer contends that counsel rendered ineffective assistance by failing to seek the redaction of certain statements from an audiotape of BCI Agent Larry Willis' interview of her.  Near the beginning of the interview, Willis told Mrs. Rizer, "I need you to be a hundred percent honest with me because if you lie about one thing, no matter how small it is, then I have to think you lied about everything, and I don't want that to happen, okay?"  Later in the interview, Mrs. Rizer told Willis, "I'm being as honest as I can be because I'm trying to figure out what I was doing."  Willis responded, "You say you're being honest as you can be.  That usually means someone is not being totally truthful with me."  Mrs. Rizer complains that because Willis is a "law enforcement officer whose very livelihood hinges in large part on how well he is able to assess whether a witness is lying to him or telling him the truth[,]" his statements "provided the jurors with an improper 'expert' lens through which to view Mrs. Rizer's credibility." (Appellant's Br. 27).

**{¶39}**  Contrary to Mrs. Rizer's contention, we believe Willis' first statement simply reinforced a common-sense notion of how lay people view matters of credibility, i.e. once a liar, always a liar.  Thus we find counsel was not deficient for failing to seek the redaction of that statement.  We do find Willis' second statement more problematic. However, even if we presume counsel acted deficiently by not seeking redaction of that statement, Mrs. Rizer has not shown a reasonable probability exists that but for the

alleged error, the result of the trial would have been different. Willis' statement amounts to an isolated comment during the course of an eight-day trial. The State did not represent Willis as an expert in lie detection, nor did Willis offer a definitive opinion on Mrs. Rizer's credibility. Moreover, the jurors had ample opportunity to evaluate Mrs. Rizer's credibility for themselves during her testimony. Accordingly, we overrule the fourth assignment of error.

## VII. Financial Sanctions

{¶40} In her fifth assignment of error, Mrs. Rizer raises various complaints about financial sanctions the trial court imposed. The trial court ordered her to pay the: 1.) "the reasonable cost of local confinement at the rate of sixty dollars per day, for a total, as of 20 January 2010, of $17,580.00"; 2.) $10,000 restitution "to the family of the victim for the cost of funeral and burial expenses"; 3.) the "reasonable costs of prosecution," which the court found to be $2,000 for transcripts and $15,000 for expert witness fees; and 4.) "the costs of this matter as determined by the Clerk of Courts for which judgment is rendered and execution may issue."

{¶41} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court of Ohio announced the standard for appellate review of felony sentences. We employ a two-step analysis. First, we "must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶4. If the sentence is not clearly and convincingly contrary to law, we review the trial court's sentence for an abuse of discretion. Id. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Adams*, supra, at

157.

## A. Costs of Prosecution

{¶42}  Mrs. Rizer contends that the trial court's imposition of costs of prosecution

was contrary to law because the court did not inform her of the consequences of non-

payment.  R.C. 2947.23(A)(1) provides:

> In all criminal cases, * * * the judge or magistrate shall include in the
> sentence the costs of prosecution, including any costs under section
> 2947.231 of the Revised Code, and render a judgment against the
> defendant for such costs.  At the time the judge or magistrate imposes
> sentence, the judge or magistrate shall notify the defendant of both of the
> following:
>
> (a) If the defendant fails to pay that judgment or fails to timely make
> payments towards that judgment under a payment schedule approved by
> the court, the court may order the defendant to perform community service
> in an amount of not more than forty hours per month until the judgment is
> paid or until the court is satisfied that the defendant is in compliance with
> the approved payment schedule.
>
> (b) If the court orders the defendant to perform the community service, the
> defendant will receive credit upon the judgment at the specified hourly
> credit rate per hour of community service performed, and each hour of
> community service performed will reduce the judgment by that amount.

{¶43}  "[T]rial courts must provide criminal defendants with the information

contained in R.C. 2947.23(A)(1)."  *State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-

1135, 930 N.E.2d 838, at ¶17 (per curiam).  Even though the State confuses the phrase

"costs of prosecution" with restitution, the State acknowledges that the court failed to

give Mrs. Rizer the required information.  Thus, we must simply decide the effect of the

trial court's error.

{¶44}  As we explained in *State v. Dismukes*, Washington App. No. 10CA35,

2011-Ohio-2193, at ¶4 (internal citations omitted):

> We have reviewed this issue in a line of cases where one panel of

this court has held that until the state has released the defendant from prison, the defendant has failed to pay court costs, and the court has ordered him or her to perform community service, the issue was not yet ripe for appellate review. However, Judges Harsha and Abele have often dissented from the application of the ripeness doctrine to situations related to R.C. 2947.23(A)(1).

In *Moss*, "a per curiam opinion in which Judges Harsha and Abele comprised the majority of the panel, this court concluded the issue was ripe, vacated the portion of the entry that imposed court costs, and remanded the case to the trial court for resentencing." Id. at ¶5. And in *Dismukes*, Judges Harsha and Abele comprised the majority panel and concluded the sentencing error was ripe for appellate review. Id. Likewise, Judges Harsha and Abele comprise the majority panel in the decision today on this issue and find the sentencing error is ripe for appellate review.

{¶45} In her argument, Mrs. Rizer characterizes the costs for transcripts, expert witness fees, and confinement as costs of prosecution. The phrase "costs of prosecution" has not been statutorily defined. *Middleburg Hts. v. Quinones*, 120 Ohio St.3d 534, 2008-Ohio-6811, 900 N.E.2d 1005, at ¶8. However:

> [The Supreme Court of Ohio] clarified the term "costs" in *State ex rel. Franklin Cty. Commrs. v. Guilbert* (1907), 77 Ohio St. 333, 338, 83 N.E. 80: "Costs, in the sense the word is generally used in this state, may be defined as being the statutory fees to which officers, witnesses, jurors, and others are entitled for their services in an action or prosecution, and which the statutes authorize to be taxed and included in the judgment or sentence." See also *State v. Perz*, 173 Ohio App.3d 99, 2007-Ohio-3962, 877 N.E.2d 702, at ¶36, 42 (holding that costs of prosecution are those expenses directly related to the court proceeding and remanding for the trial court to determine "the actual costs of prosecution"); *State v. Christy*, Wyandot App. No. 16-04-04, 2004-Ohio-6963, 2004 WL 2940888, at ¶22 ("The expenses which may be taxed as costs in a criminal case are those directly related to the court proceedings and are identified by a specific statutory authorization"); *State v. Holmes*, Lucas App. No. L-01-1459, 2002-Ohio-6185, 2002 WL 31521456, at ¶20 ("The 'costs of prosecution' * * * are the court costs incurred in the prosecution of the case").

Id.

**{¶46}** The trial court specifically designated the $2,000 fee for transcripts and $15,000 fee for expert witnesses as costs of prosecution in the sentencing entry. Though Mrs. Rizer does not mention the order directing her to "pay the costs of this matter as determined by the Clerk of Courts" in her argument, it is evident from the sentencing hearing transcript that the court considered this general costs provision as part of the costs of prosecution. However, we do not believe the costs of confinement are expenses directly related to the court proceedings, nor did the trial court indicate that it considered them to be costs of prosecution. Therefore, we reject Mrs. Rizer's argument that the court erred by not giving her R.C. 2947.23(A)(1) notifications for "the costs of confinement."

**{¶47}** But because the trial court did not give Mrs. Rizer the mandatory notifications for those items that are properly characterized as "the costs of prosecution," we find those portions of her sentence clearly and convincingly contrary to law under the first prong of the *Kalish* test. *Moss* at ¶21. Accordingly, we vacate the portions of the sentencing entry that impose costs for transcripts, expert witness fees, and "the costs of this matter as determined by the Clerk of Courts for which judgment is rendered and execution may issue," and remand this case to the trial court for resentencing on those matters. See *Moss* at ¶22. This decision renders moot Mrs. Rizer's additional argument that the court erred in determining the amount of the costs of prosecution.

### B. Restitution

**{¶48}** Mrs. Rizer also contends that the court erred when it ordered her to pay

$10,000 in restitution.  R.C. 2929.18(A)(1) states:

> (A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * *.  Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:
>
> (1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.  * * *  If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender.  If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.  If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.  * * *

{¶49}  However, the trial court had to read this section in conjunction with former R.C. 2929.19(B)(6) which provided:  "Before imposing a financial sanction under section 2929.18 of the Revised Code * * *, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."[1]  "[W]hen a trial court has imposed a financial sanction without even a cursory inquiry into the offender's present and future means to pay the amount imposed, the failure to make the requisite inquiry is an abuse of discretion."  State v. Rickett, Adams App. No. 07CA846, 2008-Ohio-1637, at ¶4, quoting State v. Bemmes, Hamilton App. No. C-010522, 2002-Ohio-1905, at ¶9. "In other words, courts have no discretion to apply an improper analysis or process in deciding an issue even where they may have discretion in the ultimate decision on the

---

[1] The statute was amended effective September 30, 2011, and the quoted language now appears in R.C. 2929.19(B)(5).

merits." Id. Our analysis is sometimes made more difficult because "[a]lthough preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if this requirement has been satisfied." *State v. Smith*, Ross App. No. 06CA2893, 2007-Ohio-1884, at ¶42, quoting *State v. Ray*, Scioto App. No. 04CA2965, 2006-Ohio-853, at ¶26.

**{¶50}** Mrs. Rizer contends that the record contains no evidence the court considered her present or future ability to pay the restitution order. No one requested a presentence investigation report, but Mrs. Rizer argues that if one had been completed, it would have shown that she could not pay restitution. She argues that at the time of sentencing, she was fifty years old (although at trial she testified that she was fifty-three), and she will be sixty-eight years old at the time of her earliest possible release from prison and "at a diminished capacity for employment." (Appellant's Br. 31). She also contends that her "indigency was not a secret" because the court "appointed two defense attorneys for her trial, and then appointed the Office of the Ohio Public Defender to prosecute her appeal." (Appellant's Br. 31).

**{¶51}** However, Mrs. Rizer acknowledges that while requesting financial sanctions during the sentencing hearing, the prosecutor specifically informed the court: "We do believe there are assets that the defendant maintains including a bank account as well as property * * *." Mrs. Rizer claims that "no further inquiry or investigation was made, nor evidence adduced to support the State's unfounded assertion at the hearing that Mrs. Rizer had assets in the form of a bank account, which likely would have been subject to forfeiture." (Appellant's Br. 31). Admittedly the prosecutor did not go into

further detail about Mrs. Rizer's assets at the hearing.  However, the court heard evidence on Mrs. Rizer's assets during the trial.  Mrs. Rizer testified that she and her husband owned land that contained their home (a double-wide trailer) and three rental units (two trailers and a "two-car garage apartment").  Mrs. Rizer testified that her husband offered to sell this property to one person for $200,000 and another (Mr. Rizer's youngest son) for $175,000.  The record also contains a document indicating the couple's property at 31035 Lovett Road in Portland, Ohio was appraised at $137,000 (this value does not appear to include the rental units).  Financial records indicate the Rizers had over $900 in their bank account as of February 20, 2009.  Although the record did not contain more recent bank records at the time of the January 2010 sentencing hearing, Mrs. Rizer testified that the couple received $1200 a month in rental income.  In addition, Mrs. Rizer testified that the couple had two vehicles – a Ford Escape and Ford Explorer – and a boat and camper.  Thus, the record contains some evidence the court considered Mrs. Rizer's present and future ability to pay restitution.

{¶52}  Mrs. Rizer also contends that the court imposed a "higher award of restitution owed to the decendent's family than was imposed and arguably supported in open court during the sentencing hearing."  (Appellant's Br. 31).  The court ordered Mrs. Rizer to pay $10,000 in restitution for burial and funeral costs.  When the court sought a figure for these expenses at the sentencing hearing, the prosecutor told the court it was $9,200.  Although no witnesses specifically testified to this figure, Mrs. Rizer apparently accepts its accuracy as she argues that "the most the court could order her to pay to the family is $9,200."  (Appellant's Br. 32).  At the hearing, the court initially indicated it would order Mrs. Rizer to pay this amount.  Later in the hearing, the court inexplicably

increased the amount to $10,000.

{¶53} The State argues that the court "must have taken into account ancillary expense[s] such as food[,] gas, lost time from work for two trials of the deceased family [sic]." However, in the absence of an agreement, "the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty. A trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the defendant's offense." *State v. Johnson*, Washington App. No. 03CA11, 2004-Ohio-2236, at ¶¶10-11 (internal citations omitted). And nothing in the record supports a restitution order greater than $9,200. Therefore, we vacate the order and remand with instructions for the trial court to impose a restitution order of $9,200.

### C. Costs of Confinement

{¶54} Mrs. Rizer also complains that the court ordered her to pay costs of confinement (although as noted above, she confuses these with costs of prosecution). R.C. 2929.18(A)(5)(ii) provides that a sentencing court may impose as a financial sanction, "[a]ll or part of the costs of confinement under a sanction imposed pursuant to section 2929.14, 2929.142, or 2929.16 of the Revised Code, provided that the amount of reimbursement ordered under this division shall not exceed the total amount of reimbursement the offender is able to pay as determined at a hearing and shall not exceed the actual cost of the confinement[.]" Mrs. Rizer essentially complains that the court abused its discretion by imposing these costs because they exceed an amount she can pay given her age, lengthy prison term, and indigent status (as demonstrated

by her appointed counsel). But given the evidence summarized above on her property holdings, we cannot say the costs exceeded the amount Mrs. Rizer could pay. Therefore, we reject this argument.

## VIII. Summary

**{¶55}** We overrule Mrs. Rizer's first, second, third, and fourth assignments of error. We sustain her fifth assignment of error to the extent she contends that the court failed to advise her of the consequences if she did not pay costs of prosecution and ordered her to pay an excessive amount of restitution. We vacate the portions of her sentence imposing costs of prosecution (i.e. the cost of transcripts, expert witness fees, and "the costs of this matter as determined by the Clerk of Courts") and the restitution award and remand for further proceedings on those issues in accordance with this opinion. We do not reach Mrs. Rizer's argument that the court ordered her to pay an improper amount for costs of prosecution – it is moot. We overrule her fifth assignment of error to the extent it challenges the court's order to pay costs of confinement.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

Kline, J., dissenting, in part.

**{¶56}**  I respectfully dissent from the part of the fifth assignment of error that addresses the trial court's failure to notify the defendant about the consequences of the failure to pay court costs.  I conclude that this issue is not ripe for review.  Accordingly, I would adhere to our decisions in *State v. Knauff*, Adams App. No. 09CA881, 2009-Ohio-5535, at ¶4-5; *State v. Welch*, Washington App. No. 08CA29, 2009-Ohio-2655, at ¶14; *State v. Bryant*, Scioto App. No. 08CA3258, 2009-Ohio-5295, at ¶11; and *State v. Slonaker*, Washington App. No. 08CA21, 2008-Ohio-7009, at ¶7.  See, also, *State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-1135, at ¶34 (Kline, J., dissenting); *State v. Kearse*, Shelby App. No. 17-08-29, 2009-Ohio-4111, at ¶12-15 (noting the disagreement within the Fourth District and applying the ripeness doctrine).

**{¶57}**  I concur in judgment and opinion as to the other assignments of error, including the remaining part of the fifth assignment of error.

**<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J.:  Concurs in Judgment and Opinion.
Kline, J.:  Concurs in part and Dissents in part with Dissenting Opinion.


For the Court


BY: _____
        William H. Harsha, Presiding Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**