[Cite as *State v. McDaniel*, 2013-Ohio-4003.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :        Case No.   12CA6

    vs.                                 :

NATHAN MCDANIEL,                        :        DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Timothy Young, Ohio Public Defender, and Dennis
                            Pusateri, Ohio Assistant Public Defender, 250 East Broad
                            Street, Ste. 1400, Columbus, Ohio 43215

COUNSEL FOR APPELLEE:       Colleen S. Williams, Meigs County Prosecuting Attorney,
                            and Amanda Franzmann, Meigs County Assistant
                            Prosecuting Attorney, 117 West Second Street, Pomeroy,
                            Ohio 45769

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-11-13
ABELE, J.

{¶ 1}   This is an appeal from a Meigs County Common Pleas Court judgment of

conviction and sentence.   A jury found Nathan McDaniel, defendant below and appellant herein,

guilty of (1) felonious assault in violation of R.C. 2903.11(A)(2), and (2) kidnapping in violation

of R.C. 2905.01(A)(4).   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ORDERING RESTITUTION
WITHOUT CREDIBLE EVIDENCE FROM WHICH IT COULD
DISCERN THE AMOUNT OF THE RESTITUTION TO A
REASONABLE DEGREE OF CERTAINTY."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ORDERING RESTITUTION
KNOWING THAT THE DEFENDANT DID NOT HAVE THE
ABILITY TO PAY IT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY ORDERING RESTITUTION
FOR ITEMS NOT PERMITTED UNDER R.C. 2929.18(A)."

{¶ 2}   Willa Dean Dailey and Curtis Dailey were married for sixteen years and have two daughters.   The couple later divorced, but when their daughter Courtney gave birth to a child, (S), Curtis moved in with his ex-wife to help raise their granddaughter.

{¶ 3}   Appellant was a family friend.   He and Courtney met as teenagers and had been friends ever since.   Late in the evening of November 2, 2011, appellant arrived at the Dailey house.   Neither Curtis nor Willa Dean suspected anything amiss, but when they were not looking, appellant snatched S and took her to his vehicle.   When the Daileys noticed their granddaughter missing, Curtis bolted from the house and saw appellant with the child.

{¶ 4}   The two men engaged in a tug-of-war over the child that Curtis finally won when S (who was not wearing diapers because of a rash) urinated in appellant's face.   Appellant then proceeded to beat Curtis and inflict substantial injuries.   Appellant eventually left the scene.

{¶ 5}   When the Sheriff's Department arrived at the Dailey home, Willa Dean called

appellant on the phone.   Both she and a sheriff's office dispatcher heard appellant threaten the family if Courtney did not repay him money that she allegedly owed.

{¶ 6}   The Meigs County Grand Jury returned an indictment that charged appellant with felonious assault, kidnapping and extortion.   Appellant pled not guilty and the matter proceeded to a jury trial.   At the conclusion of the trial, the jury found appellant guilty of felonious assault and kidnapping, but acquitted him of extortion.

{¶ 7}   At the sentencing hearing the prosecution did not request restitution.   However, the "victim's advocate" requested restitution in the event that appellant may "fall into some kind of money in the future[.]" The advocate explained that the victim (Curtis Dailey) incurred medical expenses exceeding $300,000 and would incur $800,000 in future medical expenses. Counsel objected, noting that appellant is indigent.   The trial court stated that "I am going to order 1.4 million dollars . . . in restitution to the victims in this case knowing that your client can't pay it." (Emphasis added.)   In addition, the court sentenced appellant to serve eight years in prison for felonious assault and ten years for kidnapping, with the sentences to be served consecutively for an eighteen year cumulative total.   This appeal followed.

I

{¶ 8}   Appellant challenges neither his conviction nor his prison sentences.   Rather, his assignments of error are directed at the part of the judgment that ordered him to pay $1.4 million in restitution.

{¶ 9}   Generally, appellate courts will reverse a restitution order if it is demonstrated that a trial court abused its discretion. See *In re Williams*, 4th Dist. Washington No. 05CA56, 2006-Ohio-4657, at ¶15; *State v. Johnson*, 4th Dist. Washington No. 03CA11, 2004- Ohio-2236,

at ¶11.   We note that an "abuse of discretion" is more than an error of law or judgment; rather, it implies that a court's attitude is unreasonable, arbitrary or unconscionable.   *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002); *State v. Adams*, 60 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).   Additionally, in reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court.   *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

II

**{¶ 10}**  In his first assignment of error, appellant asserts that the trial court erred by ordering him to pay $1.4 million in restitution when no credible evidence exists to support that amount.

**{¶ 11}**  R.C. 2929.18(A)(1) provides in pertinent part:

> "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

**{¶ 12}**  In the case sub judice, the trial court based the restitution ordered entirely on figures that the victim's advocate presented.   Those figures were, apparently, included in the Victim Impact Statement (VIS) from which she summarized and, the hearing transcript reveals, that the trial court judge reviewed.   The problem here, however, is that the VIS is not a part of

the record on appeal.

{¶ 13} Moreover, we note that in her unsworn statement to the trial court, the advocate gave no itemization of the victim's medical bills. At one point, the advocate stated that the victim incurred "over" $35,000 in medical bills, but did not give a precise figure. In any event, the advocate conceded that his amount had been paid by the "Healthcare Assurance Program for people that are low income." The advocate also speculated that the victim might live another twenty years and, if so, could incur expenses of $827,000. The trial court then noted that the VIS had "documented medical expenses" that exceeded $380,000. There is no mention, however, of what those expenses are, if they included the aforementioned $35,000 that the Healthcare Assurance Program paid, or if Medicare, Medicaid or some other insurance covered any of those medical expenses. Compounding the problem, even if we accept the $380,000 and add it to the $827,000, the total appears to be $1.27 million ($193,000 shy of the $1.4 million restitution order). Also, no medical bills or receipts had been submitted to the court to support any of these figures.

{¶ 14} Consequently, this Court is being asked to affirm a restitution order that is based on a victim's advocate unsworn statement, without anything in the record to support that statement. Furthermore, the amounts mentioned at the hearing do not appear to equal the amount included in the trial court's order.

{¶ 15} Ohio case law indicates that a court abuses its discretion when it orders restitution in an amount that has not been determined to have any reasonable relationship to actual loss suffered. See *State v. Rizer*, 4th Dist. Meigs No. 10CA3, 2011-Ohio-5702, at ¶53; *State v. Johnson*, 4th Dist. Washington No. 03CA11, 2004– Ohio–2236, at ¶¶10–11. Here, we do not

believe that the record substantiates the amount of the victim's actual loss.   Thus, at this juncture, the restitution amount is arbitrary.

{¶ 16}  The appellee counters that the trial court considered "many factors" when it determined the restitution amount.   First, the appellee asserts that the court reviewed the VSI.   Although this may be true, as we mentioned earlier, the VSI is not part of the record and we cannot review it.   Second, the appellee argues that the trial court reviewed the Pre-Sentence Investigation Report (PSI).   This is also true, but this particular PSI gives no details concerning financial costs and expenses stemming from the victim's injuries.

{¶ 17}  We also point out that the PSI appears to weigh against imposing restitution. First, under the "Victim's Version and Restitution," the document states "[t]here is no restitution, OVCCP is paying all of the incurred expenses."   The PSI also reveals that appellant's "FINANCIAL CONDITION" as "-0-", that the highest degree of education he obtained is a GED and that he has had three jobs in the previous seven years, with none lasting for more than a year.  The PSI also reveals that appellant has two small children, and although they may be adults by the time he leaves prison, he will no doubt owe child support.   In any event, we see nothing in the PSI to support the amount of restitution.

{¶ 18}  Finally, the appellee argues that the trial court also considered "the wishes of the victims . . . via the victim's advocate and a doctor's letter regarding the victim's present and future ability to work."   Once again, however, the VSI does not appear in the record.   As to the doctor's letter, we find no mention of it in the cited transcript pages.   However, even if the letter had been mentioned, that letter does not appear in the record.

{¶ 19}  We acknowledge that R.C. 2929.18(A)(1) allows for appellant to request a

hearing if he questions the amount of the restitution. However, in the case at bar the defense had no warning that this issue would be discussed at the sentencing hearing. We will not hold appellant responsible for waiver of a right to a hearing when he had no notice of the restitution request. Also, nothing appears in the record to suggest that prior to that hearing, appellant received a copy of the VIS.

{¶ 20} We wish to emphasize that we are not unsympathetic with the reasons that the victim's advocate and the trial court expressed for imposing restitution. The facts and circumstances of these offenses are horrific. To secure the payment of a debt, appellant seized, and attempted to kidnap, a child, then viciously struck her grandfather when he went to the child's rescue. Later, appellant threatened the family again if they did not pay him money.

{¶ 21} Having already acknowledged that appellant would not be able to pay restitution, the trial court may have, out of sympathy for the family, taken the advocate's figures and ordered appellant to pay that amount. However, this does not constitute a sufficient reason to order restitution without including evidence in the record to support the amount.

{¶ 22} Accordingly, based upon the foregoing reasons, we hereby sustain appellant's first assignment of error.

III

{¶ 23} Having sustained appellant's first assignment of error, we hereby reverse that part of the trial court's judgment that awarded restitution and remand that portion of the judgment for further proceedings consistent with this opinion. On remand, the trial court (1) should entertain a request for restitution if supported by sufficient evidence and (2) consider, as the law provides, the appellant's ability to pay restitution as well as the appropriate subjects of a restitution order.

We disregarded the two remaining assignments of error as moot.    See App.R. 12(A)(1)(c).

JUDGMENT REVERSED IN PART
AND CASE REMANDED FOR
FURTHER PROCEEDINGS.

JUDGMENT ENTRY

It is ordered that the judgment be reversed in part and remanded for further proceedings consistent with this opinion.   Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.   The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.   The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.   Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.