[Cite as *State v. Hall*, 2014-Ohio-2959.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :        Case No. 13CA3391
                                        :
    Plaintiff-Appellee,                 :
                                        :        DECISION AND
v.                                      :        JUDGMENT ENTRY
                                        :
CARL W. HALL,                           :
                                        :        **RELEASED: 06/04/2014**
    Defendant-Appellant.                :
_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Eric M. Hedrick, Ohio Assistant Public Defender, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.
_____

Harsha, J.

{¶1}  Carl Hall appeals his convictions for aggravated murder and possession of a deadly weapon while under detention.  Initially, Hall argues that his conviction for aggravated murder of a fellow inmate was against the manifest weight of the evidence because he established that he was acting in self-defense.  Specifically, Hall claims that the other inmate initiated the fight, during the struggle he saw a shank on the ground, and picked it up only to defend himself.  Hall bases his argument on the version of events he and a fellow inmate described to the jury.

{¶2}  However, the state presented evidence to support the conflicting theory that Hall originally had the shank, i.e. Hall tied a shank to his arm with plastic ties and brought it into the recreation yard on the morning in question.  Based upon those facts the jury could infer that Hall was the aggressor.  As the trier of fact, the jury was free to believe all, part or none of any witness's testimony.  When conflicting evidence is

presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of the facts and believed the testimony presented by the state. Accordingly, this is not a case where the jury clearly lost its way or created a manifest miscarriage of justice, so we reject Hall's argument.

{¶3}    Hall also complains about the admission of a recorded statement a fellow inmate, Kimball Kenaga, made three days after the incident. Because Kenaga admitted to making the prior inconsistent statements during cross-examination, Hall contends that the trial court improperly admitted the interview for impeachment purposes under Evid.R. 613(B) in the absence of a proper foundation. However, Hall failed to object and has waived all but plain error. Our review of the record shows that on cross-examination Kenaga repeatedly denied that he made prior inconsistent statements concerning who initiated the fight and whether Williams attempted to retreat. Although he qualified these denials with possible reasons for any inconsistencies, we reject Hall's argument that Kenaga eventually acquiesced to making these conflicting statements to the state trooper during the interview. And in light of the fact that defense counsel stated she had no objection to playing the entire interview for the jury, the trial court did not commit plain error by admitting the interview as extrinsic evidence of Kenaga's prior inconsistent statements.

{¶4}    Next Hall claims that the trial court erred by admitting Kenaga's interview for the limited purpose of impeaching his trial testimony without giving the jury a limiting instruction that the evidence could not be considered as substantive evidence of his guilt. However, Hall admittedly did not request such an instruction and therefore our review is again limited to plain error. Evid.R. 105 instructs a trial court "upon request of

a party" to "restrict the evidence to its proper scope and instruct the jury accordingly."

Although a limiting instruction would have been appropriate in this case, in light of the

other evidence produced at trial, we cannot say the outcome would have clearly been

different had the court given such an instruction.  So there is no plain error.

{¶5}    Hall also claims that he was denied a fair trial and due process of the law

because the prosecutor committed misconduct during closing arguments by referring to

Kenaga's prior inconsistent statements as substantive evidence.  Admittedly, some of

the prosecutor's statements that Hall points to treated Kenaga's recorded statements as

substantive evidence and were improper.  However in light of the entire case, these

remarks did not prevent Hall from receiving a fair trial.  Two of the statements Hall

points to were cumulative to other evidence admitted at trial; another of the prosecutor's

statements could reasonably be construed as arguing against Kenaga's credibility,

rather than recounting the interview as substantive evidence.  Based on the other

evidence, we cannot say the outcome of trial would have been clearly different but for

the prosecutor's improper remarks.

{¶6}    Additionally, Hall argues that the trial court erred by failing to sua sponte

instruct the jury on duress as an affirmative defense to his possession of a deadly

weapon while under detention charge.  However, Hall admits that his trial counsel did

not request such an instruction, nor did he object to the jury instructions given by the

court.  Thus, he has again waived all but plain error.  Duress, or necessity, is available

when an outside force compels the defendant to use force against another person.

Because the facts presented to the jury did not warrant an instruction on duress, there

was no error, plain or otherwise.

{¶7}   Finally, Hall contends that his trial counsel was ineffective for failing to: 1.) object to the admission of Kenaga's recorded interview under Evid.R. 613(B); 2.) object to the prosecutor's misconduct during closing arguments; 3.) request a limiting instruction that Kenaga's interview was only to be considered for impeachment purposes; and 4.) request a jury instruction on duress.  However, he has failed to show that he was prejudiced by these alleged errors.  We rejected these arguments in his other assigned errors and found that based the state's evidence at trial the outcome of trial would not have been clearly different but for the alleged errors Hall now raises.  Thus, we reject Hall's argument and affirm his convictions.

## I. FACTS

{¶8}   Hall, an inmate at the Ross Correctional Institution in Chillicothe, Ohio, was serving sentences for aggravated murder and kidnapping, as well as felonious assault.  Following a disagreement with fellow inmate Natuan Williams about the sale of "hooch," an alcoholic drink made in prison, Williams hit Hall in the head with a combination lock in a sock.

{¶9}   Afterwards both men were placed in segregation, but Hall refused to identify Williams as his attacker to prison officials and the conflict continued.  Williams sent Hall threatening notes demanding money and coffee.  On the morning in question, Hall was in the recreation yard when Williams approached him.  There was a physical altercation, which ended with Hall stabbing Williams with a shank in the face, neck and side.  Williams died as a result of his injuries.

{¶10}  The state indicted Hall with one count each of aggravated murder and possession of a deadly weapon while under detention.  At trial, the state alleged that

Hall brought the shank to the recreation yard and concealed it on his person by strapping it to his forearm with two plastic strips made from garbage bags. Williams approached Hall in the recreation yard and put on gloves, signaling he wanted to fight. And following a brief conversation, Hall took out the shank and immediately stabbed him.

{¶11} Hall admitted that he stabbed Williams, but contended that he acted in self-defense and did not bring the shank into the recreation yard. Rather, he claimed that Williams initiated the fight by lunging at him with the shank. Hall then knocked the shank out of Williams's hand as the two fought. During the struggle, Hall testified that he picked up the shank from the ground and stabbed Williams in self-defense. Nevertheless, the jury convicted Hall of both offenses. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶12} Hall raises six assignments of error for our review:

1. CARL W. HALL WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE JURY FOUND HIM GUILTY OF AGGRAVATED MURDER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

2. THE PROSECUTOR'S MISCONDUCT DENIED MR. HALL A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF MR. HALL'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DENIED MR. HALL A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT PERMITTED THE ADMISSION OF EXTRINSIC HEARSAY EVIDENCE FOR THE LIMITED PURPOSE OF IMPEACHING A WITNESS PURSUANT TO EVID.R. 613(B), WITHOUT GIVING THE JURY A LIMITING INSTRUCTION REGARDING ITS PROPER CONSIDERATION OF THAT EVIDENCE, AND WHEN IT FAILED TO ADDRESS THE STATE'S MISCONDUCT IN ASSERTING THE EVIDENCE FOR ITS SUBSTANCE WHEN ARGUING TO THE JURY, IN VIOLATION OF MR. HALL'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS

UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

4. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DENIED MR. HALL A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT PERMITTED THE ADMISSION OF EXTRINSIC HEARSAY EVIDENCE FOR THE LIMITED PURPOSE OF IMPEACHING A WITNESS PURSUANT TO EVID.R. 613(B) WITHOUT THE REQUIRED FOUNDATION, IN VIOLATION OF MR. HALL'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

5. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DENIED MR. HALL A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT FAILED TO INSTRUCT THE JURY ON DURESS AS A DEFENSE TO THE CHARGE OF POSSESSION OF A DEADLY WEAPON WHILE UNDER DETENTION, IN VIOLATION OF MR. HALL'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

6. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF MR. HALL'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

## III. LAW AND ANALYSIS

### A. Manifest Weight of the Evidence

**{¶13}** In his first assignment of error, Hall argues that his conviction for aggravated murder was against the manifest weight of the evidence because he proved he acted in self-defense and the state "offered no substantive evidence to rebut" his defense.

**{¶14}** When considering whether a conviction is against the manifest weight of the evidence, we must we must review the entire record, weigh the evidence and all reasonable inferences and consider the credibility of witnesses. *State v. Hunter*, 131

Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.  However, we must also bear in mind that credibility generally is an issue for the trier.  *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 191; *State v. Linkous*, 4th Dist. Scioto No. 12CA3517, 2013-Ohio-5853, ¶ 70.  Accordingly we may reverse the conviction only if it appears that in its role as the fact-finder and judgment of credibility, the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541(1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  Thus we will exercise our discretionary power to grant a new trial "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶15}  "Self-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"  *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997); R.C. 2901.05(A).  The elements of self-defense are cumulative, so "[i]f the defendant fails to prove *any one* of these elements * * * he has failed to demonstrate that he acted in self-defense." (Emphasis sic.)  *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

**{¶16}** To support his claim that he established he acted in self-defense, Hall relies on the version of events he and fellow inmate, Kenaga, described to the jury. At trial Hall testified that on the morning in question he was working out in the recreation yard when Williams approached him with "friends" and asked if he "had anything," referring to the money and coffee he had previously demanded from Hall. Hall told him no and Williams walked away. He claimed that Williams began walking back over a second time while putting on gloves. Hall testified that he was "terrified" because when a prisoner puts on gloves it's "a gesture that I'm going to do something to you," but admitted that he did not retreat when he saw Williams approaching. Hall testified that Williams then lunged at him with "something in his hand," and he "just reacted" by blocking his hand. During the struggle, Hall saw the shank on the ground, picked it up and "just swung around." He and Williams fell to the ground and Williams began choking him.

**{¶17}** Hall admitted that after the corrections officers arrived he threw the shank into the grassy area of the recreation yard. He claimed at that time there were still other inmates around and he did not want anyone else to use the shank against him.

**{¶18}** Hall denied having the shank tied to his arm, but admitted he was wearing the plastic ties on his arm during the fight. He explained that he used the plastic as "twist ties" to keep insects out of his food packages, however he had forgotten to take them off that morning before coming into the recreation yard. He also claimed that there were no corrections officers in the yard and he had no chance to seek assistance from prison officials after Williams approached him the first time.

**{¶19}** Kenaga testified that he was in the recreational yard on the morning in question and witnessed the fight between Hall and Williams. He stated that initially Williams called Hall over, and Hall left the group of inmates he was with to speak with Williams. He testified that thereafter he saw Williams walking towards Hall putting on gloves and told him that they needed to fight. Hall responded that "you need to leave this stuff alone," and then Williams initiated the fight by swinging at Hall.

**{¶20}** As they began struggling, Kenaga indicated that Hall fell down on the ground and Williams was "whooping him pretty good," when "all the sudden" he saw blood coming from Williams's neck. The fight continued and at one point, Williams was choking Hall before the officers separated them.

**{¶21}** Corrections Officer Darwin Secrest testified on behalf of the state that he responded to the fight between Hall and Williams on the morning in question. He testified that there was an officer assigned to the entrance gate of the recreation area and he was alerted by this officer that was a fight in the recreation yard. He testified that when he arrived, he saw Hall "kind of standing over" Williams. He instructed the men to stop fighting and when Hall turned toward him, he saw a shank in his right hand. Secrest ordered him to drop the shank several times. In response, Hall turned away and "took his other hand up" and "work[ed] on it," but because Hall's back was turned Secrest could not see exactly what he was doing. Then Hall threw the shank into a grassy area away from Secrest. Finally after several commands, Hall laid down on the ground and Secrest attended to Williams.

**{¶22}** Corrections Officer John Cox testified that on the day in question he arrived at the scene after Corrections Officer Secrest. When he arrived he saw Williams

on top of Hall.  When Officer Secrest ordered the two men to separate Williams rolled off Hall and Hall stood up.  When he stood up, Cox could see he had a shank in his hand and eventually threw it several feet away into a grassy area.

{¶23}  Corrections Officer Johnny Doughty testified that he was assigned to the isolation unit and processed Hall after the fight.  Doughty stated that during processing, he observed plastic ties on one of Hall's wrists and notified the state highway patrol.

{¶24}  Sergeant Michael Maughmer of the Ohio State Highway Patrol testified that on the day in question he was summoned to Ross Correctional Institution to investigate Williams's stabbing.  He stated that he went to see Hall in isolation and saw an "extensive" amount of dried blood on his clothing.  Sergeant Maughmer also testified he collected a piece of bloody plastic "that look[ed] like it had been twisted around" from the floor of Hall's cell.

Assignment of Error I

{¶25}  Hall contends he proved he acted in self-defense, therefore the jury's verdict is against the manifest weight of the evidence.  However, he confuses meeting his burden of proof on the affirmative defense with the burden of going forward with evidence to entitle him to jury instruction on the defense.  Hall focuses primarily on the evidence he introduced to satisfy the three elements explained in *State v. Goff*, supra. We concede that he satisfied the burden of going forward and he was entitled to an instruction on self-defense.  In Ohio, a defendant has both the burden of production, i.e. going forward with evidence, and the burden of persuasion on affirmative defenses. *See* R.C. 2901.05(A).  He overlooks the fact that the jury was free to believe all, part or none of any witness's testimony.  *State v. Tyson*, 4th Dist. Ross No. 12CA3343, 2013-

Ohio-3540, ¶ 22. Thus, the jury was free to conclude Hall failed to carry his burden of persuasion.

{¶26} The jury could have discredited Hall's testimony that he did not bring the shank with him into the recreation yard and that he used the plastic ties on his wrist as "twist ties" to keep his food packages closed. Officer Secrest testified that when he arrived at the scene and ordered Hall to drop the shank he turned away and began "working on" something on his arm before throwing the shank several feet away. The state also entered into evidence photographs of twisted plastic found on the floor of Hall's cell after the incident. These photos showed bloody pieces of clear plastic tied in knots with loops on the ends. Based on the state's evidence, the jury could have reasonably inferred that Hall used the plastic strips to secure the shank on his wrist prior to the fight and thus, he was also the aggressor.

{¶27} Hall overlooks the significance of such findings, which reasonably could have destroyed his credibility and persuasiveness with the jury. Hall was insistent that he did not bring the shank to the yard. In spite of the fact that such an admission would not have negated a self-defense theory, Hall was adamant that Williams brought the shank, rather than him. However, the evidence of the plastic wraps around his forearm and his efforts to hide the shank after the fight ended could reasonably lead the jury to believe Hall lied about who originally possessed the shank and who was the initial aggressor. And if the jury could discredit Hall in that regard, they would be justified in rejecting all his testimony about the incident, including who created the violent situation. A rejection of Hall's defense based upon his lack of credibility is consistent with a reasoned approach to the evidence.

**{¶28}** When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the testimony presented by the state. *Tyson*, 4th Dist. Ross No. 12CA3343, 2013-Ohio-3540, at ¶ 21. Because the jury is in the best position to assess witness credibility by observing their demeanor, gestures, and voice inflections, we cannot say that this is a case where the jury clearly lost its way or created a manifest miscarriage of justice. *See State v. Grube*, 2013-Ohio-692, 987 N.E.2d 287, ¶ 31, 32 (4th Dist.).

**{¶29}** We also reject Hall's argument that the state failed to rebut this defense. Once the state presents a prima facie case, it has satisfied any burden it had to go forward with evidence. When a defendant presents an affirmative defense there is no mandatory duty that requires the state to produce rebuttal evidence. Obviously, it may choose to do so, but the lack of rebuttal evidence is not fatal to the state's effort to prove the defendant guilty beyond a reasonable doubt. As apparently happened in this case, the jury can simply reject the defendant's defense and find the evidence in the state's case-in-chief more persuasive. Accordingly, we reject Hall's argument and overrule his first assignment of error.

### B. Extrinsic Evidence of Prior Inconsistent Statements

**{¶30}** Hall's next three assignments of error surround the admission of Trooper Sherry Well's recorded interview with Kenaga. For ease of analysis we will address his assignments of error out of order.

**{¶31}** In his fourth assignment of error, Hall contends that the trial court denied him a fair trial and due process of law by admitting extrinsic hearsay evidence. Hall argues that in the absence of a proper foundation under Evid R. 613(B), the trial court

erred by admitting for impeachment purposes recorded statements Kenaga made during the interview.

{¶32} At trial the state played a recorded statement Kenaga gave to Trooper Wells three days after the incident. Many of Kenaga's statements during that interview conflicted with his testimony at trial, which indicated Hall initiated the incident and during the struggle Williams "backpedaled" away from Hall, but Hall continued swinging at him with a knife. Prior to playing the recording for the jury, the court made clear that it was being offered into evidence under Evid.R. 613 as "extrinsic evidence and prior inconsistent statements," and asked if the defense had any objections. Defense counsel responded that she did not object as long as "we're playing the whole thing." The court replied "[w]e will play the whole thing and I think it's admissible under Evid.R. 613(B) * * *." After playing the recording, the court admitted it into evidence without objection. Thus, the recording was not admitted as substantive evidence, but rather as a prior inconsistent statement under Evid.R. 613(B). However, because Hall failed to object to the state playing Kenaga's interview for the jury, he has waived any purported foundational error, except for plain error. Crim.R. 52(B); *State v. Shahan*, 4th Dist. Washington No. 02CA63, 2003-Ohio-6945, ¶ 9.

{¶33} "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30. *See also* Crim.R. 52(B). In other words, plain error is not present unless but for the error complained of, the outcome of the trial would have clearly been different. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). "'Notice of plain error

under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice.'" *Steele* at ¶ 30,

quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the

syllabus.

**{¶34}** Evid.R. 613(B) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

**{¶35}** When extrinsic evidence of a prior inconsistent statement is offered into

evidence under Evid.R. 613(B), "'a foundation must be established through direct or

cross-examination in which: (1) the witness is presented with the former statement; (2)

the witness is asked whether he made the statement; (3) the witness is given an

opportunity to admit, deny or explain the statement; and (4) the opposing party is given

an opportunity to interrogate the witness on the inconsistent statement.'" *State v. Mack*,

73 Ohio St.3d 502, 514-515, 653 N.E.2d 329 (1995), quoting *State v. Theuring*, 46 Ohio

App.3d 152, 155, 546 N.E.2d 436 (1988); *State v. Schofield*, 4th Dist. Washington Nos.

01CA36, 02CA13, 2002-Ohio-6945, ¶ 134.  When the proponent lays a proper

foundation, the evidence does not relate to collateral matters, and the witness denies making the statement, the proponent may offer extrinsic evidence of the prior inconsistent statement. *Schofield* at ¶ 135.

**{¶36}** Hall contends that the state did not lay a proper foundation because Kenaga "acquiesced to making the prior inconsistent statements during the interview with Trooper Wells." To support his argument Hall points to Kenaga's testimony on cross-examination about who initiated the fight and whether Williams attempted to retreat.

**{¶37}** The record contains the following exchange between the prosecutor and Kenaga on cross-examination when asked about his interview with Trooper Wells:

THE STATE: Now, Trooper Wells specifically asked you who swung first.

KENAGA: Okay.

THE STATE: And you told Trooper Wells that Hall swung first.

KENAGA: Well Mr. Hall didn't swing first.

THE STATE: I didn't ask you what happened. I asked you what you told Trooper Wells three days after this happened.

KENAGA: Well maybe something, I got misconstrued or she got misconstrued. Somebody got misconstrued.

THE STATE: You misconstrued the question of who swung first?

KENAGA: I might have. But I know for a fact Mr. Williams swung first.

THE STATE: You don't recall telling Trooper Wells that you saw the stabber swing the other guy first?

* * *

KENAGA: No, sir.

THE STATE: You don't recall saying that?

KENAGA: No, sir. I may have said that, but maybe I misunderstood the question, or somebody got their wires crossed somewhere because I know who swung first and it was Mr. Williams who swung first.

THE STATE: When you were asked specifically by Trooper Wells, you stated that Hall wanted to let it go and the other guy wouldn't and you saw Hall swing first. Isn't that true?

KENAGA: I don't believe so.

THE STATE: You don't believe so?

KENAGA: I don't. If I did it was a misstatement. Or it was misconstrued because Mr. Williams swung at him first.

* * *

THE STATE: You testified that you saw this thing from start to finish.

KENAGA: Exactly.

THE STATE: You saw it from start to finish. I'm not talking about when they ended up on the ground. I'm talking about the start of this altercation.

KENAGA: Right.

THE STATE: And the fact that you told Trooper Wells that you saw Hall swing first.

KENAGA: I didn't see Hall swing first.

THE STATE: So your testimony today is whatever you told Trooper Wells three days after the event was a lie.

KENAGA: No sir, I'm not saying that at all. I'm saying somewhere somebody got misconstrued, wires got crossed. I'm not saying at all that I . . . I could have misunderstood that question.

THE STATE: Well the only person that could have got their wires crossed was you, sir. So, I'm asking you today about you testified to today and what you told Trooper Wells three days after this happened.

KENAGA: And I can tell you without a doubt that Mr. Williams swung at Mr. Hall first. He initiated the whole thing. I watched the whole thing.

THE STATE: So if you told Trooper Wells that three days . . .

KENAGA: It was a misstatement.

THE STATE: It was false.  If you told her directly under questioning that you saw Hall swing first, that was false.

KENAGA: I still don't think I did.

**{¶38}**  Kenaga also testified on cross-examination about whether Williams attempted to back away from Hall during the fight:

THE STATE: You told Trooper Wells that the guy that got killed fell down because he was back pedaling away from Hall, the guy with the knife. You told Trooper Wells that didn't you?

KENAGA: I don't think so.

THE STATE: You don't think you said that?

KENAGA: Nope.  I really don't.  I mean I know what I saw.  He was on top of him and the C.O's there at the Ross Correctional will tell you he was on top of Mr. Hall choking him as he was going down.
* * *

THE STATE: Now you also, let's get back to this other question. You told Trooper Wells that you saw the guy with the knife, Hall, swinging at Williams as Williams was trying to back pedal away.

* * *

THE STATE: Did you, or did you not tell Trooper Wells that?

KENAGA: Again, if . . . I could have said that. I may have gotten things misconstrued you know.  I'm not going to lie to you, it was an impact seeing that go down in the first place.  It took a little bit of a toll on me seeing it.

**{¶39}**  Thus, the record reflects that Kenaga repeatedly denied making statements to Trooper Wells that Hall initiated the fight and that Williams backed away during the struggle.  Although he qualified these denials with possible reasons for any inconsistencies, we reject Hall's argument that Kenaga eventually "acquiesced" to

making these statements to Trooper Wells, especially concerning whether Hall initiated the fight.

**{¶40}** Just as important in our view is the fact that defense counsel stated she had no objection to playing Kenaga's interview for the jury as long as the state played the entire recording. A party cannot base plain error on an act it has invited the court to make. *State v. Hicks*, 4th Dist. Adams No. 11CA933, 2012-Ohio-3831, ¶ 11. Therefore, we cannot say the trial court committed plain error by admitting the evidence under Evid.R. 613(B) as a prior inconsistent statement. We overrule Hall's fourth assignment of error.

### C. Limiting Instructions

**{¶41}** In his third assignment of error, Hall argues that the court erred and denied him a fair trial by admitting Kenaga's recorded interview for the purpose of impeaching his trial testimony without giving the jury a limiting instruction that the evidence could not be considered as substantive evidence of his guilt. However, Hall admittedly did not request such an instruction and therefore we again review his argument for plain error. *State v. Grant*, 67 Ohio St.3d 465, 472, 620 N.E.2d 50 (1993).

**{¶42}** Evid.R. 613(B), "permits extrinsic evidence of a prior inconsistent statement only to impeach," a witness's credibility. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 180, 182. When a prior inconsistent statement is offered for the purpose of impeachment, the jury may consider the prior statement as substantive evidence if the prior statement is not inadmissible hearsay. *State v. Hammond*, 8th Dist. Cuyahoga No. 85001, 2005-Ohio-1852, ¶ 79. Substantive use of a prior inconsistent statement is covered by Evid.R. 801(D)(1). Under that rule, there are

limited circumstances in which a prior inconsistent statement is not hearsay and may be used as substantive evidence, i.e. to prove the truth of the matter asserted in the statement. *Bethel* at ¶ 183.

**{¶43}** Here, we have already determined that the trial court admitted Kenaga's recorded interview as extrinsic evidence under Evid.R. 613(B) for the limited purpose of impeaching his trial testimony. Nevertheless, the state argues that a limiting instruction was unnecessary because Kenaga's prior inconsistent statements were also admissible as substantive evidence under Evid.R. 801(D)(1)(c) as identification of a person soon after perceiving the event. A prior inconsistent statement is not hearsay if it is "one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Evid.R. 801(D)(1)(c). However, the state's argument is misplaced because Evid.R. 801(D)(1)(c) is not applicable when the identification of the defendant is not in dispute; here there was no doubt that Hall was the suspect. *See State v. Turvey*, 84 Ohio App.3d 724, 743, 618 N.E.2d 214 (4th Dist.1992) (Evid.R. 801(D)(1)(c) should not be applied in circumstances "where no true issue exists concerning the identity of the perpetrator"). *See also State v. Hess*, 5th Dist. Morrow No. 2009 CA 0016, 2010-Ohio-3692, ¶ 170, fn. 1.

**{¶44}** "When evidence which is admissible * * * for one purpose but not admissible * * * for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly." Evid.R. 105. Although a limiting instruction would have been appropriate in this case, defense counsel failed to request one. And in light of the other evidence produced at trial, as noted under Hall's first assignment of error, we cannot say the outcome of the trial

would have clearly been different had the court instructed the jury it could only consider Kenaga's interview when assessing his credibility. Accordingly, we reject Hall's argument and overrule his third assignment of error.

### D. Prosecutorial Misconduct

**{¶45}** In Hall's second assignment of error, he contends that the prosecutor's misconduct during closing arguments denied him a fair trial and due process of law in violation of his federal and state constitutional rights. Specifically, Hall claims that the prosecutor erroneously referred to Kenaga's statements during the interview with Trooper Wells as substantive evidence and "urged the jury to consider and adopt the statements for their truth." And "given the strength of [his] defense," he claims but for the prosecutor's alleged misconduct the trial's outcome would have been different.

**{¶46}** "'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149, quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). However, Hall failed to object to the prosecutor's statements during closing argument and consequently we are limited to plain error review again. Crim.R. 52(B); *Powell* at ¶ 151; *State v. Boler*, 4th Dist. Athens No. 09CA24, 2010-Ohio-3344, ¶ 21.

**{¶47}** A prosecutor's conduct cannot be grounds for error unless the conduct deprived the defendant of a fair trial. *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993). Thus "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Powell* at ¶ 149, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *State v. Marcum*, 4th Dist. Gallia No.

12CA6, 2013-Ohio-5333, ¶ 31. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). *Marcum* at ¶ 31. "Prosecutors are granted wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." *Powell* at ¶ 149. The Supreme Court of Ohio has cautioned that prosecutorial misconduct constitutes reversible error only in "'rare instances.'" *Kennan* at 405, quoting, *State v. DePew*, 38 Ohio St.3d 275, 288, 528 N.E.2d 542 (1998); *Marcum* at ¶ 31.

{¶48} "'[B]oth the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). But "[p]rosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Lott* at 166. Accordingly, a prosecutor must not assert during closing argument that hearsay evidence admitted for a limited purpose other than proving the truth of its contents is substantive evidence. *State v. Kirk*, 6th Dist. Huron No. H-09-006, 2010-Ohio-2006, ¶ 28, citing *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561 (1982).

{¶49} Hall points to the following statements during closing arguments as evidence of the prosecutor's misconduct:

A struggle ensued and these two were flailing about, now when Mr. Kimball Kenaga was initially interviewed, he pretty clearly says on that recorded interview that Natuan Williams, or yes, Natuan Williams, the guy that died, the guy that bled out, was backing away from the stabber. Back pedaling away and fell down and got back up. As Carl Hall was coming after him with the shank. That he'd already stuck him with.

\* \* \*

Now, keep in mind you heard testimony and certainly in the recording of Kimball Kenaga, that the stabber, which would be Carl Hall, the defendant, person that he knew fairly well, had a shank in his right hand, like this, it would strike Mr. Williams in the left side. Which is what the evidence shows.

{¶50} Hall also points to the prosecutor's following statements during his rebuttal

argument:

But by his own testimony, even if you were to believe that, Mr. Hall states that there was a brief exchange of words and that this Natuan Williams bent towards him and lurched towards him and apparently went to grab a hold of him. Now he said that he thought there might be something in his hand. He didn't testify that he saw something in his hand. He just reacted. And then they tusseled. And what did he explain to you what tussling was? Well, we were swinging at each other. And even Kimball Kenaga said, if you listen to the recording of his testimony, that they were just basically, looked to him like that they were flailing around. Like neither one of them could really fight was what he was implying. No disrespect to the defendant. It's what he said.

\* \* \*

Let me talk to you about Kimball Kenaga for a minute. You heard his testimony yesterday. And you heard me ask him on cross examination, if he was not being truthful. If he was not now testifying to the, several things that were completely opposite of what he had testified to or related just three days after this occurred. And he suggested to you yesterday and I think again today that, maybe it was just misconstrued, that he confused the names. Now keep in mind, that he admits and he admits on that recording, that he knew. He was acquainted with Carl Hall. He wasn't mistaken about that. Now, he said he has cholesterol medicines and found out that he has brain freezes. Well, you can listen to that tape. Did his brain freeze up at all? You have in evidence that tape that you listened to yesterday of an interview Kimball Kenaga that took place just three days after Nautuan Williams was murdered. And there are some

things that he's very clear about on that. He's very clear that there was a quick verbal exchange. And he's very clear. He says without prompting that the stabber, the stabber swung first. He is asked specifically by Trooper Wells, who swung first. And who does he say? Carl swung first. The stabber swung first. There are at least three times in that recording where he very specifically identifies who was the initial aggressor? Carl Hall. Yeah, I know that guy, Carl Hall. Anyone of you think he was being honest when he got up here and changed his story? If you need to, please listen to what he had to say right after this happened. Ask yourself if you think he was having a brain freeze, or if he was confused about the events at that time. Or if he was mistaken at all about the identity of who did the initial stabbing and about who was backing up and trying to get away from the guy with the shank. He's very unambiguous about that in that recording. He does simply say, well, I don't think Carl should be charged with murder. One murder to another.

{¶51} Contrary to Hall's contention, we do not believe that the prosecutor made Kenaga's interview "the centerpiece" of his closing argument. Admittedly some of the prosecutor's statements improperly alluded to Kenaga's recorded interview as substantive evidence, particularly his statement about Williams backing away during the fight. However in light of the entire case, these remarks did not prevent Hall from receiving a fair trial. The prosecutor's statement that Kenaga recalled during the interview that Hall was holding the shank in his right hand was cumulative, as Officer Secrest testified to the same thing. His statement that during the interview Kenaga said Hall and Williams were flailing around was also cumulative because Hall himself testified they "were all over the place," "tussling" and "throwing punches." Moreover, the prosecutor's statements during rebuttal recounting the clarity of Kenaga's recollection on the recorded interview could be construed as an argument against his credibility, i.e. Kenaga was not confused as he alleged during cross-examination about Trooper Wells's questions. And "isolated comments by a prosecutor are not be taken out of

context and given their most damaging meaning." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 94.

**{¶52}** Hall also points to the fact that the jury requested to listen to Kenaga's recorded interview during deliberations as evidence that the prosecutor's remarks amounted to plain error. However, this is nothing more than speculation, as the jury could have just as plausibility requested to listen to the interview to determine Kenaga's credibility. Accordingly based on the evidence we already recounted under Hall's first assignment of error, we cannot say the outcome of trial would have been different but for the prosecutor's improper remarks during closing arguments. Finding no plain error, we overrule Hall's second assignment of error.

### E. The Affirmative Defense of Duress

**{¶53}** In his fifth assignment of error, Hall argues that the trial court erred by failing to instruct the jury on duress as an affirmative defense to his possession of a deadly weapon while under detention charge. However, Hall admits that his trial counsel did not request such an instruction, nor did he object to the jury instructions given by the court. Once again, he has waived all but plain error. *See State v. Alexander*, 4th Dist. Adams No. 12CA945, 2013-Ohio-1913, ¶ 27 (failure to object to trial court's jury instructions waives all but plain error); *State v. Hubbard*, 10th Dist. Franklin No. 11AP–945, 2013-Ohio-2735, ¶ 62 (applying plain error because defendant failed to request a duress instruction).

**{¶54}** Duress is an affirmative defense to any crime except aggravated murder, therefore Hall makes no argument that duress applies to that conviction. *See State v. Getsy*, 84 Ohio St.3d 180, 197-198, 702 N.E.2d 866 (1998). When a defendant asserts

an affirmative defense, "[t]he burden of going forward with the evidence * * * and the burden of proof, by a preponderance of the evidence * * * is upon the accused." R.C. 2901.05(A). Thus, "in order for the defendant to successfully raise an affirmative defense, 'evidence of a nature and quality sufficient to raise the issue must be introduced.' Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Getsy* at 198-199, quoting *State v. Robinson*, 47 Ohio St.2d 103, 111-112, 351 N.E.2d 88 (1976).

**{¶55}** "One of the essential features of the defense of duress is a sense of immediate, imminent death, or serious bodily injury if the actor does not commit the act as instructed. * * * The force used to compel the actor's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw." *Getsy* at 199. "It must be understood that the defense of * * * duress is strictly and extremely limited in application and will probably be effective in very rare occasions. It is a defense and not a conjured afterthought." *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979).

**{¶56}** To support his claim that the trial court should have sua sponte instructed the jury on the defense of duress, Hall points to the trial court's statements during its consideration of his self-defense instruction. The court stated that Hall "had reasonable grounds to believe and an honest belief even if mistaken that he was in imminent and immediate danger" and "testimony * * * indicated that [Hall] was retreating." He

contends that these findings demonstrate that he was also entitled to an instruction on duress.  However, we find his argument meritless.

{¶57}  Hall confuses duress and self-defense; they are not the same.  In self-defense, the accused uses force against the victim to prevent the victim from harming the accused.  *See Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, at ¶ 36.  In duress the accused uses force against the victim, or commits an illegal act, in response to coercion or a threat of harm from an outside source.  When the source of the outside force is a person, the defense is duress. *See generally, United States v. Bailey*, 444 U.S. 394, 409-410, 100 S.Ct. 624, 67 L.Ed.2d 575 (1980).  When the source is physical or natural, the defense is one of necessity.  *Id.*  There is no evidence to support either theory here, so an instruction on duress was not warranted.  *See Cross* at 488 (trial court may refuse to give instruction on defense of duress when not applicable to the evidence).

### F. Ineffective Assistance of Counsel

{¶58}  In his sixth assignment of error, Hall argues his trial counsel was ineffective for failing: 1.) to object to the admission of Kenaga's recorded interview under Evid.R. 613(B); 2.) to object to the prosecutor's misconduct during closing arguments; 3.) to request a limiting instruction that Kenaga's interview was only to be considered for impeachment purposes; and 4.) to request a jury instruction on duress.

{¶59}  To prevail on an ineffective assistance of counsel claim, the appellant must show: 1.) counsel's performance was deficient and 2.) the deficient performance prejudiced the defense so as to deprive the accused of a fair trial.  *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, an appellant must show that counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. *Id.*

{¶60} Here, Hall has failed to show that he was prejudiced by these alleged errors. He bases his claim of ineffective assistance of counsel on the arguments raised in his second, third, fourth and fifth assignments of error. However, we have already rejected these arguments and found that based the state's evidence, the outcome of trial would not have been clearly different but for the alleged errors Hall now raises. And because "[a] defendant's failure to establish one prong of the *Strickland* test negates a court's need to consider the other," we find Hall's argument meritless and overrule his sixth assignment of error. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

### IV. CONCLUSION

{¶61} We reject Hall's argument that his conviction for aggravated murder is against the manifest weight of the evidence because the jury was free to believe the state's witnesses and reject his claim of self-defense. Accordingly, we overrule his first assignment of error. Likewise, we reject Hall's argument that his trial counsel was ineffective because he failed to show he was prejudiced by her performance and we overrule Hall's sixth assignment of error. Applying plain error to Hall's remaining assigned errors, we cannot say the outcome of trial would have been different but for

the alleged errors he now complains of and overrule his second, third, fourth and fifth

assignments of error.  Accordingly, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
     William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**